In the Matter of CAMERON K. WEHRINGER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 10, 1988

## APPEARANCES OF COUNSEL

*Hal R. Lieberman* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Cameron K. Wehringer,* respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

Petitioner Departmental Disciplinary Committee moves for an order pursuant to 22 NYCRR 603.4 (d) confirming the Hearing Panel's report, findings, conclusions and recommendations, disbarring respondent Cameron K. Wehringer from the practice of law.

Respondent was admitted to practice as an attorney and counselor-at-law in the First Department on March 31, 1952. He has maintained a law office in the First Department at all times relevant herein.

After a hearing before a Hearing Panel of the Departmental Disciplinary Committee, respondent has been adjudged guilty of engaging in conduct prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (A) (5); conduct adversely reflecting upon his fitness to practice law in violation of DR 1-102 (A) (6); asserting a position or taking other action on behalf of a client when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another in violation of DR 7-102 (A) (1); assisting a client in conduct he knew to be illegal in violation of DR 7-102 (A) (7); and communicating with a party he knew to be represented by an attorney without the prior consent of the attorney representing such party in violation of DR 7-104 (A) (1).

Evidence adduced before the Hearing Panel, including tape recordings of the respondent, introduced without his objection, established with persuasive force that respondent knowingly aided a client's attempt to extract a favorable divorce settlement using as leverage the abduction of an infant from its mother and rightful custodian.

Specifically, respondent's client, John Brannigan, was separated from his wife, Audrey Brannigan, in March 1984. By order of the Family Court, Westchester County, entered in October 1984, Audrey was awarded custody of the couple's infant son and granted permission to live in Massachusetts. John was permitted visitation pursuant to arrangement. After

moving to Massachusetts, Audrey obtained a temporary order of protection from the Massachusetts District Court, Lawrence Division, effective until October 29, 1985, directing John to refrain from abusing her and barring John from Audrey's home.

It was in April 1985 that John Brannigan dismissed his then attorney, Arnold Cribari, Esq., and retained respondent. Respondent, although never formally substituted as John's attorney, prepared a proposed settlement agreement which he forwarded on or about June 15, 1985 to Peter Bodnar, Audrey Brannigan's lawyer. The proposed agreement contained provisions awarding John Brannigan custody of the couple's child and limiting Audrey to one visit with the child every three months. It further provided that Audrey would pay John for the support of the child and that she would accept an unspecified lump sum in lieu of equitable distribution of the marital property while waiving all other financial claims. For obvious reasons, the proposed agreement was unacceptable and, accordingly, was rejected by Mr. Bodnar.

Following the predictable failure of the settlement proposal, John Brannigan, on July 16, 1985, traveled to Audrey's home in Lawrence, Massachusetts, assaulted Audrey's father and forcibly abducted the child. As John Brannigan's brother Paul testified, and as the Hearing Panel whose findings we confirm found, respondent was informed of the abduction on the day of its occurrence.

Three days later, on July 19, 1985, John Brannigan contacted Audrey and told her that the child would not be returned until she worked out an agreement with respondent. On the advice of law enforcement authorities, Audrey contacted respondent and engaged in telephone negotiations, substantial portions of which she tape recorded. During the negotiations, respondent repeatedly made disparaging comments respecting Audrey's attorney, Peter Bodnar, at one point advising her to "get rid of him". At no time did he obtain permission from Mr. Bodnar or Audrey Brannigan's Massachusetts attorney to negotiate directly with their client. In discussions with Audrey, respondent referred to himself variously as a mediator, "like a judge" and most often as John's attorney. Acknowledging that the agreement was being obtained under duress, he nevertheless repeatedly sought Audrey's assurance that she would abide by it and did not hesitate to exploit the unconscionable advantage inuring to his client by reason of the kidnapping.

An agreement having been reached, Audrey and respondent met in the parking lot of a Denny's Restaurant where the document, already executed by John Brannigan, was to be signed by Audrey. On finding that the agreement made no specific arrangement for the return of the baby, Audrey hesitated to sign. Thereupon, respondent, angered, grabbed the agreement and started back to his car stating, "If you don't want to sign it you don't have to sign it, but if you don't sign it, you won't see your son again." Audrey signed the agreement. Audrey eventually regained custody of her child, but only after her husband was apprehended by the police as a result of a high-speed car chase. John Brannigan was subsequently charged and convicted in Massachusetts of numerous criminal offenses.

It is plain from the foregoing that respondent did in fact violate the above-cited Disciplinary Rules. Although he knew that Audrey Brannigan was represented by counsel he negotiated directly with her without permission from her attorneys and so violated Code of Professional Responsibility DR 7-104 (A) (1). He, in addition, knowingly aided his client in an illegal scheme to extract a favorable divorce settlement in violation of DR 7-102 (A) (7) and facilitated his client's harassing and malicious tactics in violation of DR 7-102 (A) (1). Almost without exception, his conduct was prejudicial to the administration of justice and, so, violative of DR 1-102 (A) (5), and it is nothing, if not an understatement, to observe that respondent's conduct adversely reflects on his fitness to practice law (see, DR 1-102 [A] [6]).

In the face of such overwhelming evidence of serious misconduct, respondent urges that his above-described actions were not those of a lawyer but rather those of a neutral mediator and should be evaluated as such. However, it is clear that at all times relevant herein, respondent acted as his client's lawyer. Indeed, he billed John Brannigan, whom he represented through September 1985, $8,450 for legal services rendered between July 20 and 26, 1985, the precise period during which he negotiated with Audrey. Also indicative of his role as an advocate during that period was respondent's refusal to divulge to Audrey the substance of his communications with John upon the ground that they were privileged. It is, moreover, the case that respondent lost no opportunity to extract concessions from Audrey, thus affording his client the full advantage to be derived from his criminal conduct.

Respondent's procedural exceptions to the disciplinary proceedings are nothing short of frivolous and require no reply.

We could not agree more with the Hearing Panel's conclusion that respondent's activities in the Brannigan matter were reprehensible and that his "defenses to the charges and his attempts to justify his actions demonstrate he has no conception of the responsibilities and ethics demanded of a member of the Bar." There can be no doubt that the sanction of disbarment is necessary in this case. Although this conclusion is fully warranted by respondent's conduct in the Brannigan matter, it is to be noted in addition that respondent has been previously admonished for commencing and prosecuting unfounded litigation.

Accordingly, petitioner's motion should be granted in its entirety and respondent's name stricken from the roll of attorneys.

MURPHY, P. J., SANDLER, ASCH, ROSENBERGER and ELLERIN, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective April 10, 1988.