The PEOPLE of the State of
Colorado, Complainant,

v.

Lorraine A. CHAPPELL, Attorney–
Respondent.

No. 96SA310.

Supreme Court of Colorado,
En Banc.

Nov. 4, 1996.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for Complainant.

Lorraine A. Chappell, Pro Se.

PER CURIAM.

A hearing panel of the supreme court grievance committee approved the findings and the recommendation of a hearing board that the respondent in this lawyer discipline case be disbarred. The respondent has not excepted to the panel's action. We accept the hearing panel's recommendation.

I.

The respondent was admitted to practice law in Colorado in 1977. Because the respondent did not answer the complaint, a default was entered against her, and the allegations of fact contained in the complaint were deemed admitted. C.R.C.P. 241.13(b); *People v. Chappell,* 783 P.2d 838, 839 (Colo. 1989). Based on the respondent's default and the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

A man and woman were married in April 1991, and their son was born later that year. On December 13, 1993, the husband filed a petition for dissolution of the marriage. The wife was then pregnant with their daughter who was born on June 13, 1994. The respondent represented the wife in the dissolution proceeding.

The husband vacated the family home in January 1994. A mutual restraining order prevented either party from removing the child from Colorado. The dissolution court granted temporary custody of the son and use of the family home to the respondent's client. The husband was ordered to pay child support and maintenance directly to the wife in the amount of $1,500 per month. A temporary orders hearing was scheduled for March 11, 1994.

Dr. Jean LaCrosse was appointed to do a custody evaluation for the court. Two days before the temporary orders hearing, the respondent and her client met with Dr. LaCrosse who advised them that she was recommending that the husband be granted sole custody of both the son and the unborn daughter.

Later, the respondent told her client that the court would probably accept Dr. LaCrosse's recommendations. The wife states that the respondent advised her as her attorney to stay, but as a mother to run. The respondent also informed her client about a network of safehouses for people in her situation, and helped her to liquidate her assets and empty her bank accounts. The respondent contacted a friend of her client and asked the friend to pack her client's belongings from the marital home and to put them into storage. The friend states that the respondent let her into the home with a key, and gave her money, provided to the respondent by her client, to pay for the moving and

storage. The respondent kept the storage locker key according to the friend.

The respondent appeared for the temporary orders hearing on March 11, 1994 without her client. The respondent's request for a one week continuance was granted. Nevertheless, the court allowed the husband to testify concerning the temporary orders. The respondent argued against a change in the interim orders and stated that the child was doing well in his own home. When the trial judge questioned her as to the whereabouts of her client, the respondent replied that she was unable to answer because of the attorney-client privilege. The court then ordered an immediate change of custody to the husband, as well as continued support payments. The respondent asked the court to order the support payments to be made through the court's registry.

After the husband's lawyer requested it, the court rescinded the portion of the temporary restraining order that prohibited the husband from going onto the property where the child was located. The court asked the respondent to call the child's day care center and advise persons there of the change in the restraining order, and the respondent agreed to make the call. Following the hearing, the respondent notified her client of the change in the custody order.

When the husband went to the wife's residence, he discovered that she had moved. His lawyer then filed an emergency motion for custody and pick-up of the child, which was granted, and a petition for writ of habeas corpus, which was heard on March 16, 1994.

The respondent appeared in court on March 16, advised the court that she would assert the attorney-client privilege, and asked for time to hire a lawyer to represent her. The court also heard testimony from her client's friend concerning the events just prior to the March 11 hearing.

On March 21, 1994, the court ordered the return of the husband's property that was then in storage. In addition, the respondent, who was represented by counsel, testified regarding the attorney-client privilege and the exceptions to the privilege concerning a client's criminal or fraudulent acts or intentions. Upon order of the court, the respondent testified that she had notified her client of the March 11 revised custody order.

The respondent subsequently testified on March 25, 1994, that she and her client had been in contact five or six times since the March 11 hearing, and that her client was out of the state. The respondent also testified that her client had asked her to safeguard her property and that in compliance with that request, she had rented a storage facility for that purpose. The respondent then withdraw from the case.

The wife was out of Colorado for two weeks, and when she returned she and her child lived at a battered women's shelter. The husband gained physical custody of the child after the wife went to the hospital for a prenatal visit. She then retained another lawyer to represent her.

A few days after the birth of the daughter, the court entered temporary orders granting immediate custody of the infant to the husband. The court also found that the respondent had perpetrated a fraud on the court when she accepted the husband's offer to continue paying support and maintenance on March 11, despite the change in custody. The court stated that the respondent "was aware that her client was on the run with the child and yet accepted the offer of child support and maintenance." After terminating the support order, the court ordered that $1,500 held in the court's registry be returned to the husband.

A permanent orders hearing was held in March 1995. The wife testified that the respondent had explained "the underground" to her, had assisted in emptying her bank accounts, and had advised her on how to avoid being caught. The wife was charged with violation of a child custody order, contrary to section 18-3-304(2), 8B C.R.S. (1986), a class 5 felony. The wife pleaded guilty in exchange for a three-year deferred judgment.

The respondent's conduct violated R.P.C. 1.2(d) (a lawyer "shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent"); R.P.C. 3.3(a)(2) (a lawyer shall not knowingly

fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client); R.P.C. 8.4(b) (it is professional misconduct for a lawyer to commit a criminal act by aiding the lawyer's client to commit a crime); and R.P.C. 8.4(c) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

## II.

The hearing panel approved the board's recommendation that the respondent be disbarred, and the respondent has not excepted to that recommendation. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of mitigating circumstances, disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; ... or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA *Standards* 5.11. *See also* ABA *Standards* 6.11 (disbarment generally appropriate when a lawyer with intent to deceive the court makes a false statement or improperly withholds material information, causing serious injury to a party or potentially significant adverse effect on a legal proceeding).

In *People v. Bullock*, 882 P.2d 1390, 1391–92 (Colo.1994), we disbarred a lawyer following his conviction for aiding a client who was a fugitive from justice by arranging to supply the client with money. Given the seriousness of the respondent's conduct in aiding her client to violate the custody order resulting in the client being charged with a felony, the fact that the respondent has not been charged or convicted of an offense is not important for disciplinary purposes. *See* C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action); *People v. Morley*, 725 P.2d 510, 514 (Colo.1986) (conviction of criminal offense is not a condition precedent to attorney disciplinary proceedings involving the offense, nor is acquittal a bar). The lawyer in *Morley* was disbarred for counseling clients in an illegal prostitution scheme. *Id.* at 518–19.

The hearing board found no factors tending to mitigate the respondent's misconduct. On the other hand, a number of aggravating factors exist in this case. The respondent was previously suspended for forty-five days in 1989 for neglect and misrepresentation, *People v. Chappell*, 783 P.2d 838, 839–40 (Colo.1989), which is an aggravating factor, ABA *Standards* 9.22(a). The hearing board also determined that the respondent had a dishonest or selfish motive, *id.* at 9.22(b); she intentionally failed to comply with the rules and orders of the grievance committee, *id.* at 9.22(e); she refuses to acknowledge that her conduct was wrong, *id.* at 9.22(g); the child victim of her misconduct was vulnerable, *id.* at 9.22(h); and the respondent has substantial experience in the practice of law, *id.* at 9.22(i).

The respondent used her license to violate the core ethical and professional standards of her profession. Disbarment is the only appropriate form of discipline. Accordingly, we accept the hearing panel's recommendation and order that the respondent be disbarred.

## III.

It is hereby ordered that Lorraine A. Chappell be disbarred and that her name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the issuance of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $547.08 to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S,

Denver, Colorado 80202, within thirty days after the announcement of this opinion.