**The PEOPLE of the State of Colorado, Complainant,**

**v.**

**Karen J. ROOSE, Respondent.**

**Nos. 01PDJ078, 01PDJ097, 01PDJ108.**

April 16, 2002.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

Opinion issued by the Presiding Disciplinary Judge ROGER L. KEITHLEY, and Hearing Board members EDWIN S. KAHN and DANTE J. JAMES, both members of the bar.

### OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION: ATTORNEY DISBARRED*

A trial in this matter was held on February 22, 2002 before the Presiding Disciplinary Judge ("PDJ") and Hearing Board members Edwin S. Kahn and Dante J. James, both members of the bar. Charles E. Mortimer, Jr. represented the People of the State of Colorado (the "People"). Karen J. Roose ("Roose") appeared on her own behalf.

The Complaint in Case No. 01PDJ078 was filed August 21, 2001. Roose filed an Answer on September 20, 2001. The Complaint in Case No. 01PDJ097 was filed on October 23, 2001. Roose filed a Motion to Dismiss and Answer on November 21, 2001. The

PDJ denied the Motion to Dismiss by order dated December 4, 2001.[1]

At trial, the People's exhibits 1 through 9 and Roose's exhibits A through C were offered and admitted into evidence. David Baumgarten and Philip Klingsmith testified on behalf of the People. Roose testified on her own behalf. The PDJ and Hearing Board heard argument of counsel, assessed the credibility of the witnesses, reviewed the exhibits admitted into evidence and the Stipulation of Facts filed by the parties on February 15, 2002, and determined the following findings of fact by clear and convincing evidence.

## I. FINDINGS OF FACT

Karen J. Roose has taken and subscribed the oath of admission, was admitted to the bar of this court on June 8, 1999, and is registered upon the official records of this court, registration no. 30750. She is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b). At the time of the events upon which this proceeding is based, Roose had been engaged in the practice of law for less than two years, had not participated in a jury trial and was inexperienced in trial practice.

The conduct giving rise to this proceeding involved a case pending in Hinsdale County District Court, *In the Interest of S.S. and C.S.*, Case No. 00JV01, a dependency and neglect matter. The case was initiated on November 11, 2000 on behalf of the People of the State of Colorado. David Baumgarten, Hinsdale County Attorney, was the attorney for petitioner, the People of the State of Colorado. On November 13, 2000, Judge J. Steven Patrick appointed Roose as attorney for the respondent mother, N.P., who was then residing in Aruba and not physically present in Colorado. Roose filed several motions challenging personal jurisdiction over N.P. Those motions were heard and denied by Judge Patrick.

On December 29, 2000, the court set the dependency and neglect jury trial date for February 21 and 22, 2001. Roose participated in this setting. A pre-trial conference was held on February 15, 2001, and the magistrate conducting the pre-trial conference re-affirmed the trial date of February 21. A jury trial commenced on February 21, 2001, before Judge Patrick. During the second day of the jury trial, Roose requested a bench conference out of the presence of the jury and orally requested that the matter be dismissed on grounds substantially similar to the grounds which Judge Patrick had considered prior to the trial and denied. Judge Patrick again denied the requested dismissal. Roose also moved for a mistrial on the grounds that she was not capable of handling the jury trial, had no experience with juries and was generally providing ineffective assistance to her client. Although Judge Patrick denied that motion, he did appoint Rufus O. Wilderson as co-counsel with Roose for N.P. Roose objected to Wilderson's appointment as co-counsel and informed Judge Patrick that she could not continue to represent N.P. in the trial and would have to leave the courtroom if he insisted on proceeding. Judge Patrick informed Roose that the trial would continue, that she did not have the option of walking out of the case in the middle of the trial and that she must remain in the courtroom. Roose again informed Judge Patrick that she was leaving and began to walk out of the courtroom. Judge Patrick ordered Roose to remain in the courtroom and advised her that if she left she would be held in contempt of court. Roose left the courtroom.

Having appointed Wilderson as co-counsel, Judge Patrick elected to proceed with the trial. Wilderson, who had spoken at some length with N.P. by phone the evening before, advised the court that N.P. wished to confess the neglect charges and move forward to the treatment plan phase of the case. Judge Patrick, with all counsel except Roose present, placed a telephone call to N.P., confirmed that she wished to confess the neglect charges, that she understood her admission and that she wanted to proceed to the treatment plan stage. N.P. confirmed

---

**1.** On December 14, 2001, Case No. 01PDJ097 was consolidated into Case No. 01PDJ078. In the course of the trial on February 22, 2002, Case No. 01PDJ108, the immediate suspension matter, was also consolidated into Case No. 01PDJ078.

Wilderson's statements to the court, the court accepted N.P.'s confession of neglect, and subsequently discharged the jury.

Shortly thereafter, Judge Patrick issued a contempt citation to Roose and ordered that the contempt proceedings be assigned to another judge.[2] Judge Patrick, by minute order, also terminated Roose's appointment as counsel for N.P. Before she received a copy of the minute order, however, Roose filed another motion seeking to dismiss the case based upon her absence from the courtroom when N.P. was called by telephone and in the course of the telephone conference, admitted the neglect issues. Judge Patrick denied the motion by minute order dated February 26 and mailed the minute order to counsel, including Roose. The minute order stated, in part, "Ms. Roose has now been discharged from her duties in this case. She is instructed to refrain from filing any further pleadings in this case."

Thereafter, Philip Klingsmith was appointed by the court to represent N.P. Notwithstanding her removal and Mr. Klingsmith's appointment, on August 22, 2001, Roose filed a Notice of Appeal in the Colorado Court of Appeals, Case No. 01CA1566, *In the Interest of S.S. and C.S.* The Notice of Appeal identified Roose as the attorney for N.P. both in the caption and in the first paragraph. The Notice of Appeal did not disclose that Roose had been removed from further participation in the case by Judge Patrick, no longer represented N.P. nor that Roose had been ordered to refrain from filing further pleadings.

The Notice of Appeal contained several additional factual statements made by Roose which she knew to be false at the time they were advanced to the Court of Appeals. Roose stated in the Notice "[t]he Respondents were not permitted to participate in the trial by phone." At the time Roose made that statement, she knew that Judge Patrick had specifically authorized N.P. to participate in the trial by phone from Aruba at her own expense. Roose also stated "N.P. and L.P. denied the charges on February 15 and asked for a jury trial. Trial was set for Feb.

21, two business days away." Roose knew the trial setting occurred on December 29, not February 15 as she represented to the Court. The Notice also stated, "Karen Roose, N.P.'s attorney was dismissed from the Court for objecting to the proceedings and thus could not participate in the disposition phase." In fact, Roose walked out of the courtroom after the trial judge had ordered her to stay and advised her of potential contempt proceedings if she left. No impediment prevented Roose from participating in the proceedings apart from her voluntary and contemptuous election to leave at her client's peril.

In response to the Notice of Appeal, a Motion to Strike was filed by opposing counsel disclosing that Roose had been removed as counsel for N.P. by an order of court. The Court of Appeals remanded the matter to Judge Patrick for further proceedings to determine the identity of N.P.'s counsel. Judge Patrick held a hearing on the matter and found that a person other than Roose was counsel for N.P.

The Court of Appeals entered an order on November 30, 2001, stating, in part, "[a]ny further filings by Ms. Roose shall be stricken and not considered. This Court finds no merit to Ms. Roose's arguments that she has not been removed as counsel for appellant."

Although N.P., with the assistance of court-appointed counsel, had entered into a treatment plan following the confession of the neglect issues, questions arose regarding her compliance with the treatment plan. Consequently, a termination hearing was scheduled for December 11, 2001. On December 6, 2001, following phone conversations between N.P. and Roose, N.P. retained Roose as her private counsel and Roose immediately filed an Entry of Appearance. The same day the Entry of Appearance was filed, Judge Patrick, in light of Roose's prior conduct, rejected Roose's Entry of Appearance.

At the December 11 termination hearing, N.P. appeared by phone and was represent-

---

**2.** Eventually Roose pled guilty to the contempt charge and was sentenced to 120 hours of community service.

ed by Mr. Klingsmith. N.P. refused to participate in the termination hearing unless she could be represented by Roose. Judge Patrick informed N.P. that she would be represented by Mr. Klingsmith and the termination hearing would proceed. N.P. persisted in her refusal to participate, the hearing proceeded, and her parental rights were terminated.

## II. CONCLUSIONS OF LAW

### Case No. 01PDJ078

Roose's departure from Judge Patrick's courtroom in mid-trial in defiance of the judge's express order that she not leave the courtroom and in light of the judge's advisement that her departure would be grounds for the issuance of a contempt citation is the type of conduct by an attorney which is specifically prohibited by Colo. RPC 3.4(c)(an attorney shall not knowingly disobey an obligation under the rules of a tribunal). By doing so, Roose required the court to enter otherwise unnecessary orders, issue a contempt citation, recuse himself from participation in the subsequent contempt proceedings and request the appointment of a replacement judge to preside over the contempt proceedings. Such conduct also violated Colo. RPC 8.4(d)(it is professional misconduct for an attorney to engage in conduct prejudicial to the administration of justice). *See People v. Jaramillo*, 35 P.3d 723, 731 (Colo. PDJ 2001) (holding that a violation of Colo. RPC 8.4(d) requires proof of some nexus between the conduct charged and an adverse effect upon the administration of justice, *citing People v. Wright*, 35 P.3d 153, 158 (Colo. PDJ 1999)) (finding a violation of Colo. RPC 8.4(d) for attorney's conduct which resulted in a direct disruption of pending proceedings); *People v. Johnson*, 35 P.3d 192, 195 (Colo. PDJ 1999) (finding a violation of Colo. RPC 8.4(d) where attorney failed to appear at a hearing on child support arrearages and thereby directly delayed and altered the course of court proceedings

concerning the income assignment and prejudiced the administration of justice).

■ Moreover, Roose's departure from the courtroom in mid trial at her client's peril demonstrates a severe lack of understanding of the attorney's role in adversarial proceedings, the need for adequate preparation, and the remedies available when adverse rulings are encountered. This conduct results in the conclusion that Roose failed to provide competent representation to her client within the meaning of Colo. RPC 1.1(an attorney shall provide competent representation to a client).[3]

### Case No. 01PDJ097

■ The Complaint in Case No. 01PDJ097 alleges that Roose violated Colo. RPC 3.3(a)(1)(an attorney shall not knowingly make a false statement of material fact or law to a tribunal) and Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) based on Roose's knowingly making false statements of material facts to a tribunal, in this case the Colorado Court of Appeals. At the time Roose filed the Notice of Appeal with the Colorado Court of Appeals she knew that Judge Patrick had removed her from further representation of N.P. and ordered her to refrain from further filings on N.P.'s behalf. Notwithstanding that knowledge, Roose represented to the appellate court that she was N.P.'s attorney and was authorized to file the Notice.

The filing of a Notice of Appeal by a lawyer triggers numerous events which have significant legal effect. Inherent in the filing of a Notice of Appeal by an attorney is the representation that the attorney is authorized by the client to commence such proceedings and the legal consequences that automatically follow. Consequently, Roose's representation that she was N.P.'s attorney and authorized to commence an appeal is material.

---

**3.** The PDJ and Hearing Board are aware that the issues raised in the underlying dependency and neglect matter are presently before the Colorado Court of Appeals. The findings and conclusions herein regarding Roose's failure to provide com-

petent representation are based upon analysis of The Colorado Rules of Professional Conduct and are not intended to analyze the issues which may be pending before the Court of Appeals.

Moreover, Roose knowingly mischaracterized factual events occurring in the court below by stating that: (1) trial was set only two days before it commenced; (2) N.P. was not allowed to participate in the proceedings by phone, and (3) Roose was not able to participate in the dependency and neglect trial. Each of these facts was false and known to be false by Roose when she filed the Notice.

Each of the three facts misrepresented by Roose in the body of the Notice of Appeal describe factual events which, if true, may call into question the fairness and propriety of the underlying proceeding. Although our form of adversarial dispute resolution allows an attorney to advance and characterize facts in the fashion most favorable to the client's cause, it does not allow an attorney to advance falsehoods as facts in order to enhance the client's cause. Because the falsehoods advanced by Roose, if true, could have raised questions regarding the fairness and propriety of the underlying trial, they were material.

Consequently, Roose's filing of the Notice of Appeal violated Colo. RPC 3.3(a)(1)(an attorney shall not knowingly make a false statement of material fact or law to a tribunal) and Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

### III. IMPOSITION OF SANCTION

■ The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 6.11 provides:

Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

The Commentary to ABA *Standard* 6.11 further provides that "lawyers who engage in these practices violate the most fundamental duty of an officer of the court."

ABA *Standard* 6.21 provides:

Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.

ABA *Standard* 4.52 provides:

Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.

■ Recent Colorado law is in accord with the ABA *Standards*, § 6.11 and § 6.21. The presumptive discipline for a knowing misstatement of material fact to a tribunal is disbarment. *See People v. Espinoza*, 35 P.3d 552, 559 (Colo. PDJ 2001) (attorney disbarred for numerous violations of the rules of professional conduct including making a misstatement of a material fact to a court). In *People v. Kolbjornsen*, 35 P.3d 181, 184 (Colo. PDJ 1999), the respondent attorney was disbarred from the practice of law for conduct involving the knowing submission of false information to the bankruptcy court. The PDJ and Hearing Board stated "[j]udicial officers, members of the profession and the public at large must be able to rely upon the truthfulness of an attorney's statements to the court. Confidence in the truth-seeking process engendered in our system of justice cannot exist absent such reliance." *Id.* at 184.

Disbarment is within the range of sanctions imposed for misrepresentations to a tribunal in other jurisdictions. In *Attorney Grievance Commission of Maryland v. Myers*, 333 Md. 440, 635 A.2d 1315 (1994), the respondent attorney was disbarred for falsely stating under oath that he had never received a speeding ticket when in fact he had three speeding tickets on his record. The court stated:

The purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. (citations omitted).

The public interest is served when the court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. (citations omitted). Such a sanction represents the court's fulfillment of its responsibility to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute. Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules.

*Id.* at 1318.

*See also Florida Bar v. Budnitz,* 690 So.2d 1239, 1241 (Fla.1997)(respondent attorney disbarred for making false statements during a disciplinary proceeding); *Florida Bar v. Merwin,* 636 So.2d 717, 718 (Fla.1994)(disbarring respondent attorney for making false misrepresentations of material fact to the court in one proceeding); *Florida Bar v. Rightmyer,* 616 So.2d 953, 955 (Fla.1993)(disbarring attorney where attorney pled *nolo contendere* to three counts of perjury arising from his deposition and trial testimony in a civil mortgage foreclosure suit and stating that "an officer of the court who knowingly and deliberately seeks to corrupt the legal process can logically expect to be excluded from that process."); *In the Matter of Wehringer,* 135 A.D.2d 279, 283, 525 N.Y.S.2d 604 (1988)(respondent attorney disbarred for knowingly aiding a client's attempt to extract a favorable divorce settlement using as leverage the abduction of an infant from its mother and rightful custodian).

■ Knowing disobedience to a court order resulting in serious injury to a client or serious interference with a legal proceeding also justifies the imposition of disbarment. *See Matter of Lopez,* 980 P.2d 983, 984 (Colo.1999)(disbarring attorney subject to conditional admission of misconduct for making misrepresentations of material fact on a liquor license application, misrepresenting material information to the liquor licensing authority and to prospective investors). In

*People v. Chappell,* 927 P.2d 829, 831 (Colo. 1996), the attorney representing the wife in a child custody matter assisted the client's escape and did not disclose the client's activities during the court proceedings. When the respondent attorney appeared for a temporary orders hearing, the court questioned her about the whereabouts of her client. The respondent refused to answer based on attorney-client privilege. The court later found that the respondent attorney had perpetrated a fraud on the court when she accepted the husband's offer to continue paying support and maintenance at the previous hearing, despite the change in custody, when respondent was aware that her client was fleeing with the child. *Id.* at 830. The court found that the respondent attorney had "used her license to violate the core ethical and professional standards of her profession" and therefore disbarment was the only appropriate form of discipline. *Id.* at 831.

The present case is similar to *Chappell* insofar as both the attorney respondent in *Chappell* and Roose both suffer from an extreme lack of understanding of the adversarial process. The inability to understand key concepts of the attorney's role with regard to the client and to the court system is so fundamentally lacking in both cases that the lack of understanding results in profound harm to the client and to the system as a whole.

Roose also demonstrated in the course of the disciplinary proceeding a lack of comprehension with regard to her misconduct. Roose perceived her actions as constituting zealous advocacy for her client. Throughout the disciplinary action, Roose failed to exhibit any remorse for her actions, and indeed, seemed to believe that she was being needlessly singled out for discipline. The PDJ and Hearing Board are reluctant to disbar an attorney who was recently admitted to the bar, has had little prior experience, and has not had the benefit of mentoring. The depth of Roose's lack of understanding, even after these proceedings, however, convinces the PDJ and Hearing Board that a period of suspension would be futile.[4] The extent of

4. In a case concerning another lawyer who was

in the first years of practice, the Supreme Court

Roose's lack of understanding in this matter strongly suggests that the public cannot be protected in the absence of a significant period of time within which Roose may endeavor to understand those legal principles applicable to the proper representation of a client's cause.

The PDJ and Hearing Board considered aggravating factors pursuant to ABA *Standards* 9.22 and mitigating factors pursuant to ABA *Standards* 9.32 respectively. In aggravation, Roose has engaged in a pattern of misconduct, *see id.* at 9.22(e), and has committed multiple offenses, *see id.* at 9.22(d). Roose's client was in a vulnerable position and in need of competent legal representation, *see id.* at 9.22(h). Significantly, Roose refused to acknowledge the wrongful nature of her misconduct, *see id.* at 9.22(g). In mitigation, Roose has no prior disciplinary record, *see id.* at 9.32(a), Roose is inexperienced in the practice of law, *see id.* at 9.32(f) and Roose suffered other sanctions as the result of the finding of contempt, *see id* at 9.32(k).

The degree of injury is a threshold factor in determining the appropriate sanction. Both ABA *Standards* 6.11 and 6.21 require serious injury, significant adverse effect on a legal proceeding or serious interference with a legal proceeding to justify the imposition of disbarment. Roose's misconduct, at least in part, deprived her client of the opportunity to meaningfully contest the termination of her parental rights at the December 11 hearing. Although there is insufficient evidence in the disciplinary record to determine if the outcome of that termination hearing might have been different if Roose had not interjected herself in the proceedings, it is evident from the record in this case that discussions between Roose and N.P. resulted in N.P. refusing to participate in the termination hearing and thereby loose the opportunity to personally participate in the hearing on December 11. The loss of that opportunity constituted serious injury to the client. Moreover, Roose's misconduct both in the trial court and appellate court seriously interfered with those proceedings and had a significant adverse effect upon them. Consequently, the degree of injury occasioned by Roose's misconduct meets the requirements necessary to impose disbarment.

Neither the lack of prior discipline, inexperience in the practice of law or imposition of other sanctions present in this case are sufficient to reduce the indicated sanction of disbarment to a lesser level.

## IV. ORDER

It is hereby Ordered:

1. KAREN J. ROOSE, registration number 30750 is DISBARRED, effective thirty-one days from the date of this decision. Roose's name shall be stricken from the role of attorneys licensed to practice law in this state.

2. Roose is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Roose shall have ten (10) days thereafter to respond.

---

found that disbarment was the appropriate sanction. In *People v. Murray*, 887 P.2d 1016, 1021 (Colo.1994), the Court stated:

The gulf between the respondent's perception and understanding of the problems he has caused and the true state of affairs is under-scored by the respondent's recommendation to the court that he be reinstated to the practice of law from the order of immediate suspension and receive, presumably, a public censure at the most for his misconduct. *Id.* at 1021.