In the Matter of Karen J. ROOSE, Attorney–Respondent.

No. 02SA155.

Supreme Court of Colorado, En Banc.

April 21, 2003.

As Modified on Denial of Rehearing May 12, 2003.

Kim E. Ikeler, Assistant Regulation Counsel, Denver, Colorado, Attorney for Petitioner.

Karen J. Roose, Lake City, Colorado, Attorney for Attorney–Respondent.

Justice COATS delivered the Opinion of the Court.

Karen Roose, the respondent in the underlying attorney disciplinary proceeding, appealed from the order of the Hearing Board disbarring her and imposing costs. *See People v. Roose*, 44 P.3d 266 (Colo. PDJ 2002). The Board found that she had violated several provisions of the Colorado Rules of Professional Conduct by walking out of a dependency and neglect proceeding, despite being ordered by the court to remain as co-counsel, and by filing a notice of appeal and misrepresenting pertinent events to the court of appeals, after the trial court had terminated her appointment as counsel. Although we agree that the respondent violated the Rules of Professional Conduct, we hold that a proper application of the ABA Standards for Imposing Lawyer Sanctions leads to the conclusion that suspension rather than disbarment is the appropriate sanction.

## I.  PROCEDURAL HISTORY

Karen J. Roose was charged by the Attorney Regulation Counsel in two separate complaints, with violations of Colo. RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); 8.4(d) (engaging in conduct prejudicial to the administration of justice); 1.1 (failing to provide competent representation to a client); 3.3(a) (knowingly making a false statement of material fact or law to a tribunal); and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).  All of the charges arose from Roose's conduct in connection with a dependency and neglect proceeding in Hinsdale County, styled *In the Interest of S.S. and C.S.*, Case No. 00JV01.

According to the findings of the Board, following a hearing at which Roose represented herself and testified, at the time of the events critical to this case, Roose had been practicing law for less than two years and was generally inexperienced with trial practice.  In November 2000, she was appointed as attorney for the respondent mother, N.P., who was then residing in Aruba and was not physically present in Colorado. Roose filed several motions challenging personal jurisdiction over N.P., which were heard and denied by the district court.  An adjudicatory jury trial began on February 21, 2001.  On the second day of trial, Roose moved for a mistrial on the grounds that she was not capable of handling the jury trial, had no experience with juries, and was generally providing ineffective assistance to her client.  The district court denied Roose's motion and over her objection appointed the father's attorney as N.P.'s co-counsel.  Roose continued to object and notified the court that she would have to leave if it insisted on proceeding in this fashion. Despite being ordered to remain and being advised that she would be held in contempt, Roose left the courtroom.

On the advice of her new counsel, N.P. confessed the neglect charges, and the dis-

trict court both terminated Roose's appointment as counsel for N.P. and issued her a contempt citation. The district court subsequently denied a motion to dismiss the dependency and neglect matter, filed by Roose before she received the court's order terminating her, and mailed Roose a new minute order, again indicating that she had been discharged from her duties and instructing her to refrain from filing any further pleadings in the case. The district court appointed a third attorney to represent N.P. in the remaining stages of the case.

In August 2001, Roose filed a notice of appeal in the court of appeals. In the notice, Roose identified herself as "appointed attorney for N.P.," and she included several statements pertaining to the events below that the Hearing Board determined she knew to be false. In response to opposing counsel's motion to strike, disclosing that Roose had been removed as counsel by order of the trial court, the court of appeals remanded the case to the district court for its resolution of the counsel question. After receiving notice of the district court's decision that Roose was not N.P.'s attorney, the court of appeals ordered, on November 30, any further filings by Roose to be stricken and not considered.[1]

Following phone conversations between N.P. and Roose, N.P. retained Roose as her private counsel for the termination hearing set for December 11, 2001. Roose filed an Entry of Appearance on December 6, which the district court rejected. Despite N.P.'s refusal to participate in the termination hearing unless she could be represented by Roose, the district court informed her that she would be represented by the attorney it had appointed.[2] N.P. refused to participate and her parental rights were terminated.

The Hearing Board concluded that Roose's departure from the courtroom in defiance of the district court's express order amounted to knowingly disobeying the court's order, in violation of Colo. RPC 3.4(c); engaging in conduct prejudicial to the administration of justice, in violation of Colo. RPC 8.4(d); and failing to provide competent representation to her client, in violation of Colo. RPC 1.1. *Roose,* 44 P.3d at 270. The Board also concluded that in filing her notice of appeal, Roose violated Colo. RPC 3.3(a)(1), prohibiting her from making false statements of material fact or law to a tribunal, and Colo. RPC 8.4(c), prohibiting her from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. *Roose,* 44 P.3d at 271.

In imposing the sanction of disbarment, the Board considered the ABA Standards for Imposing Lawyer Sanctions (1991 & Supp. 1992), and found applicable Standards 6.11 and 6.21. *Id.* Construing these standards and existing Colorado law to hold that "[t]he presumptive discipline for a knowing misstatement of material fact to a tribunal is disbarment," *Id.,* and that "[k]nowing disobedience to a court order resulting in a serious injury to a client or serious interference with a legal proceeding also justifies the imposition of disbarment," *Id.* at 272, the Board turned to consideration of the aggravating and mitigating factors enumerated in ABA Standards 9.22 and 9.32.

Although Roose had no prior disciplinary record, *see* ABA Standards 9.32(a), was inexperienced in the practice of law, *see id.* at 9.32(f), and suffered other sanctions as the result of being held in contempt, *see id.* at 9.32(k), the Board found that her conduct was also aggravated by constituting a pattern of misconduct, *see id.* at 9.22(c), involving the commission of multiple offenses, *see id.* at 9.22(d), and injuring a client who was in a vulnerable position, *see id.* at 9.22(h). Primarily, however, the Board determined that the degree of injury caused by Roose's conduct, which it found to include the deprivation of any opportunity for N.P. to meaningfully contest the termination of her parental

---

1. The court of appeals, however, did not strike the notice of appeal and in fact recertified the appeal, ordering that N.P.'s new appointed counsel represent her on appeal as well. In a combined opinion, dated December 12, 2002, the court of appeals addressed the issues arising from both the adjudicatory trial and termination hearing. *See People in the Interest of S.S. and C.S. and Concerning N.P.,* Nos. 01CA1566 & 02CA0096, 2002 WL 31770823 (Colo.App. Dec. 12, 2002) (not selected for official publication).

2. The court of appeals affirmed this decision of the trial court, finding no abuse of discretion, in the combined appeal.

rights at the December 11 hearing and causing serious interference with both the district and appellate court proceedings, satisfied the requirements for disbarment. *Roose,* 44 P.3d at 273. It further found that her misconduct was not sufficiently mitigated to justify a reduction of that sanction. *Id.*

Roose, continuing to represent herself, appealed directly to this court, challenging the jurisdiction of the Board, its legal interpretation of the ethical proscriptions she was found to have violated, and the propriety of the sanction of disbarment. *See* C.R.C.P. 251.27.

## II. RULES OF PROFESSIONAL CONDUCT

■ Acts or omissions by an attorney constituting misconduct, as defined by the Colorado Rules of Professional Conduct, are grounds for discipline. *See* C.R.C.P. 251.5(a). In addition to violations and attempts to violate the specific rules of professional conduct, misconduct is defined by Rule 8.4 of the Rules of Professional Conduct to include a broad range of attorney conduct, including conduct that involves dishonesty, fraud, deceit or misrepresentation and conduct that is prejudicial to the administration of justice. Colo. RPC 8.4(c), (d). Among the specific provisions of the rules, an attorney is required to provide competent representation to a client, Colo. RPC 1.1, and is prohibited from "knowingly mak[ing] a false statement of material fact or law to a tribunal," Colo. RPC 3.3(a)(1), or "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Colo. RPC 3.4(c).

It is clear that Roose violated Colo. RPC 3.4(c) by leaving the courtroom during trial in the face of an express court order not to do so. She does not assert that she refused on grounds that she had no valid obligation to comply, but rather that she acted in what she considered to be the best interests of her client, erroneously anticipating that her contemptuous conduct would provoke an immediate hearing and an opportunity to vindicate her client's interests. Abandoning a proceeding under these circumstances was also clearly disruptive and prejudicial to the administration of justice, as contemplated by Colo. RPC 8.4(d), and constituted a failure to provide competent representation to her client, as required by Colo. RPC 1.1.

■ Characterizing Roose's conduct in filing a notice of appeal as knowingly making false statements of material fact is more problematic, but in light of the record before us, we cannot say that the Board erred. The Board expressly found that Roose knowingly mischaracterized several factual events in the notice and misidentified herself as the appointed counsel for N.P. *Roose,* 44 P.3d at 270–71. Both the accuracy of her factual statements and her mental state in making them are determinations of fact, which we will disturb only when clearly erroneous. C.R.C.P. 251.27(b); *In re Hickox,* 57 P.3d 403, 404 (Colo.2002). By failing to designate a transcript of the disciplinary hearing, including even her own testimony, Roose has made review of the sufficiency of factual findings unavailable under any standard. *People v. Lutz,* 897 P.2d 807, 808 (Colo.1995) (if no transcript of testimony before the Board is filed with the reviewing court, the Board's factual findings are considered binding on review). At least to the extent that her status as appointed counsel below is material to various aspects of an appeal, Roose's conduct therefore violates Colo. RPC 3.3(a)(1). In addition, regardless of her mental state, several of Roose's statements, and omissions, objectively constituted misrepresentations to the court of appeals, in violation of Colo. RPC 8.4(c).

## III. SANCTION

■ This court will affirm a sanction imposed by the Board unless it determines the form of discipline bears no relation to the conduct, is manifestly excessive or insufficient in relation to the needs of the public, or is otherwise unreasonable. C.R.C.P. 251.27(b); *In re Cardwell,* 50 P.3d 897, 905 (Colo.2002). In making those determinations, we have consistently recognized the ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) as the guiding authority for selecting the appropriate sanction

to impose for lawyer misconduct. *In re Attorney D.*, 57 P.3d 395, 399 (Colo.2002) (and cases cited therein). The purpose behind the creation of these Standards was to enhance the consistency of sanctions imposed in attorney disciplinary proceedings. *See* ABA Standards, Preface. The Standards describe a range of available sanctions and require, in choosing the appropriate one, consideration of the duty that was violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of various aggravating or mitigating factors. ABA Standards 3.0.

In arriving at the conclusion that disbarment was an appropriate sanction, the Board relied on two Standards distinguishing disbarment from mere suspension on the basis of a specific intent, above and beyond a knowing violation of the ethical prohibition itself. *See* ABA Standards 6.11 and 6.21. In neither instance, however, did the Board find that Roose acted with the required specific intent. Furthermore, in light of the other findings and conclusions of the Board, the prohibited specific intent is not necessarily implied by the knowing conduct in this case.

In the absence of aggravating or mitigating circumstances that could alter the sanction, the ABA Standards would prescribe disbarment, rather than suspension, as the appropriate sanction when the knowing violation of a court order not only causes harm but causes serious harm, and when the court order in question was violated "with the intent to obtain a benefit for the lawyer or another." *Compare* ABA Standards 6.21 *with* 6.22. Although it noted the ABA Standard, the Board found merely that "[k]nowing disobedience to a court order resulting in serious injury to a client or serious interference with a legal proceeding also justifies the imposition of disbarment." *Roose*, 44 P.3d at 272.

It nowhere suggested, either in its findings of fact or conclusions of law, that Roose acted from an intent to gain a benefit for herself or her client. Quite the contrary, it made clear that it believed she acted from an extreme lack of understanding of the adversarial process and perceived her actions to constitute zealous advocacy on behalf of her client. *Id.*

Unlike the attorney disbarred in *People v. Chappell*, 927 P.2d 829 (Colo.1996), with whom the Board compared her, Roose did not assist her client in absconding with a child; refuse to disclose her client's whereabouts in the face of a court order; or perpetrate a fraud on the court by making arrangements for child support while knowing that her client was fleeing with the child. To the extent that Roose's departure during trial could be seen as a deliberate attempt to force an additional hearing on motions that had already been denied, as she claimed, rather than merely an inability to control her anger and outrage at the court's denial of her motion, we do not consider an additional hearing the kind of benefit contemplated by the ABA Standard. Even if abandoning the proceeding to her court-appointed co-counsel could be fairly characterized as a serious interference with the proceeding, we hold therefore that disbarment was not the presumptive sanction for Roose's disobedience to the trial court's order.

Similarly, with regard to Roose's notice of appeal, in the absence of aggravating or mitigating circumstances, the ABA Standards would prescribe disbarment, as distinguished from suspension, as an appropriate sanction for knowingly submitting false statements to a court only when such conduct results in serious harm and the false statements are submitted "with the intent to deceive the court." *Compare* ABA Standards 6.11 *with* 6.12. Rather than specifically finding, as a matter of fact, any such intent by Roose, however, the Board found instead that "[t]he presumptive discipline for a knowing misstatement of material fact to a tribunal is disbarment." *Roose*, 44 P.3d at 271.

In support of this proposition, the Hearing Board, consisting of the Presiding Disciplinary Judge and two Hearing Board Members, cited as authority earlier opinions issued by the PDJ and various Hearing Board Members. Unless stayed, vacated, reversed, or otherwise modified by order of this court, a final decision of a Hearing Board clearly resolves the matter before it and is binding on the parties, just as if it were the order of this court. *See* C.R.C.P. 251.19(b)(6). When the case does come be-

fore this court, the court affirms the decision of the Hearing Board unless the findings are clearly erroneous or the discipline bears no relation to the conduct, is manifestly excessive or insufficient or is otherwise unreasonable. As to matters of law, this court conducts de novo review. C.R.C.P. 251.18(b). Thus, as a practical matter, every case proceeds before a different panel and the outcome of that case cannot logically be controlled by cases decided by a previous Hearing Board. On he other hand, opinions issued by the Hearing Boards are officially published for the benefit of the profession in order to advise and instruct practicing attorneys of conduct that has resulted in discipline, the basis for and severity of the discipline, and the reasoning of the Hearing Board. In addition, the opinions of the Hearing Boards serve to instruct and guide, but not bind, future Hearings Boards in their decisions; and serve to inform the public of the proceedings.

▮▮▮ The rationale of the Hearing Board in a particular case can neither serve as stare decisis precedent for future cases nor constitute the law of the jurisdiction. This court, and only this court, has the power to determine the law of this jurisdiction as applied in disciplinary proceedings. In the event a Hearing Board decision is not appealed to us, or for any other reason we do not address a legal interpretation of the board, this court's silence cannot be understood as an implicit adoption of the Hearing Board's conclusion's of law so as to be entitled to stare decisis effect in future proceedings.

▮▮▮ While the Board may have intended merely to indicate its observation that normally a lawyer would not knowingly make a misstatement to a tribunal without an intent

to deceive it, the distinction between knowledge and intent is critical in imposing sanctions under the Standards relevant here. The latter may not be presumed from proof of the former but must be separately proved by clear and convincing evidence. Much like the Colorado Criminal Code, see § 18–1–501, 6 C.R.S. (2002), the ABA Standards define "intent" as the conscious objective or purpose tô accomplish a particular result, while "knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. See ABA Standards, Definitions. In neither its findings of fact nor its conclusions of law does the Board suggest that Roose acted with the conscious objective of deceiving the court of appeals about the events to which she referred, and in light of the limited purpose of a notice of appeal, such a finding would have been questionable.

Unlike pleadings or motions, the purpose of a notice of appeal is not to allege facts to be accepted or disputed or to request action by a court. A notice of appeal identifies and gives notice to others that the appellant is seeking review of specific rulings or orders and provides the reviewing court with an advisory listing of issues he intends to raise. Even if Roose was actually aware that her truncated, conclusory characterizations were, in themselves, likely to give the reader a false impression, her statements are explainable as attempts to characterize the issues she intended to raise in favorable legal terms rather than attempts to deceive the court about what happened below.[3]

▮▮▮ None of the statements at issue misrepresented the timing or nature of the proceedings below, which would have been relevant to the appellant's right to appeal. Even

---

**3.** In stating that the respondents in Aruba were not permitted to participate at the adjudicatory trial, Roose argues that she was merely drawing the conclusion that by permitting them to participate by phone only at their own expense, the court effectively denied them any right to participate at all. Similarly, in indicating that after the respondents entered their plea, the court set the trial for only two business days later, despite her knowing that the court actually entered the setting weeks earlier, Roose contends that she was

merely drawing the conclusion that the court set the trial date for only two days after it was legally permitted to do so. The third challenged statement appears to have been truly ambiguous, in that the Board considered it to assert that Roose was dismissed from court and therefore wąs unable to participate at the rest of the adjudicatory trial, while she claims that by "disposition phase" she was referring to the termination hearing, from which she actually was barred from participation by the court.

Roose's reference to herself as "appointed attorney for N.P.," without further indicating (at least at that point) that she had been dismissed from that role, was explainable as her description of the proceedings in which she acted in that capacity and her intention to raise the lawfulness of her dismissal as an issue on appeal, rather than any attempt to deceive the appellate court about the fact of her removal. An attorney need not have been the appellant's attorney below to represent him on appeal, and an attorney enters his appearance in the appellate court by merely signing a pleading or entry of appearance. *See* C.A.R. 5(a). The Board did not find that Roose filed the notice without the approval of N.P., and it is clear that shortly thereafter N.P. even refused to participate further without Roose as her attorney.

In the absence of a finding of intent to obtain a benefit by disobeying the district court's order or to deceive the court of appeals, the appropriate sanction for both knowingly submitting materially false statements and knowingly violating a court order, as long as those acts caused at least some injury to a party or adverse effect on the legal proceeding, is suspension. *See* ABA Standards 6.12 and 6.22; *see also In the Matter of Attorney C,* 47 P.3d 1167, 1173 (Colo.2002). Whether or not any injury or interference with the district or appellate court proceedings could be fairly characterized as serious under the circumstances of this case, Roose's conduct clearly had at least some adverse effect on legal proceedings in both courts.

██ With regard to the appropriate length of suspension, *see* ABA Standards 2.3, Commentary, as the Board noted, Roose's conduct is mitigated by her inexperience in the practice of law, her lack of any prior disciplinary record, and the fact that she has already been held in contempt and punished by the district court.[4] Perhaps as importantly, despite her conduct being misguided, there is no suggestion that it was motivated by self-interest or self-aggrandizement. *See* ABA Standards 9.22(b) and 9.32(b) (listing

dishonest or selfish motive as an aggravating or mitigating factor). Furthermore, to the extent that her violations could be considered a pattern of misconduct or the commission of multiple offenses, they actually involved only two separate acts, arising from the same lack of understanding, and the same misguided perception of zealous advocacy, in the same case. Although her client may have been vulnerable in some sense, Roose's shortcomings did not arise from any neglect or willingness to take advantage of that vulnerability, *see, e.g., People v. Brailsford,* 933 P.2d 592, 595 (Colo.1997) (finding that attorney took advantage of the privacy associated with marital relationship when he assaulted his wife at a time and place when rescue was unlikely and exploited the disparity in size between them), but rather from an overly-zealous attempt to protect her client's legal rights.

Whether or not the Hearing Board is proved right in its factual assessment that any period of suspension will be futile in light of the depth of Roose's lack of understanding, the findings of the Board do not support disbarment in this case. Roose's failure to appreciate the serious nature of her conduct and the jurisdiction of the Hearing Board to discipline her is, however, a serious matter, meriting a substantial period of suspension and a redetermination of her fitness before being permitted to again practice law in this jurisdiction. Considering the nature of Roose's conduct, together with mitigation and aggravation, we therefore agree with the original recommendation of the Attorney Regulation Counsel that suspension for a period of one year and one day is appropriate and accomplishes these purposes. *See* C.R.C.P. 251.29(b) (requiring an attorney who has been suspended for a period longer than one year to file a petition for reinstatement and prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders, and is fit to practice law).

---

4. She was required to pay for the additional proceedings she caused and perform community

⁻ service for her conduct.

## IV. CONCLUSION

We therefore affirm the hearing board's findings of ethical violations and its assessment of costs against the respondent. We, however, modify its order of disbarment by instead ordering that the respondent be suspended from the practice of law for one year and one day.

The judgment of the Hearing Board is therefore affirmed in part and reversed in part.