The PEOPLE of the State of
Colorado, Complainant,

v.

John S. DUNSMOOR, Respondent.

No. 03PDJ024.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Oct. 24, 2003.

Attorney Regulation. The Hearing Board disbarred Respondent, John S. Dunsmoor, attorney registration number 11247 from the practice of law in the State of Colorado. In May 2002, Dunsmoor was charged in a one-count criminal information in the United States District Court for the Northern District of Indiana pursuant to 18 U.S.C. § 664 (1994) for embezzling funds of employee pension and welfare benefit plans. Also in May 2002, Dunsmoor was charged in a one-count information filed in the United States District Court for the District of Colorado pursuant to 18 U.S.C. § 1957 (1994) for money laundering. In June 2002, Dunsmoor pled guilty to both of the above charges. Respondent's conduct violated Colo. RPC

8.4(b) constituting grounds for discipline pursuant to C.R.C.P. 251.5. Respondent was ordered to pay the costs of the disciplinary action.

Opinion by Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board Members GAIL C. HARRISS and DAVID A. HELMER, both members of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

### SANCTION IMPOSED: ATTORNEY DISBARRED

A Sanctions Hearing pursuant to C.R.C.P. 251.15(b) was held on October 23, 2003, before the Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board Members, Gail C. Harriss and David A. Helmer, both members of the bar. James C. Coyle, Deputy Regulation Counsel, represented the People of the State of Colorado ("People"). John S. Dunsmoor, the respondent, ("Dunsmoor") appeared by telephone.

The Colorado Supreme Court immediately suspended Dunsmoor from the practice of law in Colorado in Case No. 03SA102 on April 21, 2003. The suspension was based upon a March 17, 2003, Petition for Immediate Suspension filed by the People based on the same factual basis giving rise to these proceedings. The People filed a Complaint in this disciplinary matter on April 16, 2003. The Citation and Complaint were sent via regular and certified mail to the respondent on the same date. The People filed a Proof of Service on May 21, 2003. The Proof of Service shows that the Citation and the Complaint were sent to both Dunsmoor's registered business address and his registered home address. In addition, the Citation and Complaint were also sent to a recently discovered home address, as well as to Dunsmoor at the Florence, Colorado, federal prison camp. Dunsmoor failed to file an Answer to the complaint. Dunsmoor did submit a letter dated May 29, 2003, which did not admit or deny any allegation contained in the Complaint, but could be considered as a written statement of mitigation. The Hearing Board accepts such document (Exhibit D to the People's Motion for Default) as a written statement for mitigation purposes only.

On June 5, 2003, the People moved for default on the claims set forth in the Complaint. Copies of the Motion for Default were sent to Dunsmoor at his home and prison camp addresses. Dunsmoor did not oppose the People's Motion for Default.

On July 14, 2003, the PDJ granted the Motion for Default as to the facts set forth in the Complaint, which were deemed admitted, and as to the claims set forth in the Complaint, which were deemed established. The PDJ directed that the matter be set for a trial/sanctions hearing. Copies of the PDJ's Order Re: Default were sent to Dunsmoor at his home and prison camp addresses.

The matter was originally scheduled for September 23, 2003, but continued to October 14, 2003. At Dunsmoor's request, the October 14, 2003, hearing date was vacated and the matter was then rescheduled for October 23, 2003, at 9:00 a.m.

At the Sanctions Hearing Dunsmore openly acknowledged that his conduct required disbarment and apologized to the court for his misconduct. The Hearing Board considered the facts established by the entry of default, the People's argument and Dunsmoor's statement, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

John S. Dunsmoor has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 16, 1981, and is registered upon the official records of the Supreme Court, registration number 11247. He is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).

 All factual allegations set forth in the Complaint were deemed admitted by the entry of default, and therefore are established by clear and convincing evidence. The entry of default also deemed established the violations of the Rules of Professional Conduct set forth therein.

On May 2, 2002, Dunsmoor was charged in a one-count criminal information in the United States District Court for the Northern District of Indiana. The information from the Northern District of Indiana charged the respondent with a violation of 18 U.S.C. § 664 (1994), embezzling funds of employee pension and welfare benefit plans.

On May 22, 2002, Dunsmoor was charged in a one-count information filed in the United States District Court for the District of Colorado. The information from the District of Colorado charged the respondent with a violation of 18 U.S.C. § 1957 (1994), money laundering.

On June 21, 2002, Dunsmoor pled guilty to both of the above charges. Dunsmoor filed a written factual basis for the plea of guilty to both charges in the federal criminal matters on May 2, 2002.

Dunsmoor provided the following factual basis for the 18 U.S.C. § 664 violation, embezzling funds of employee pension and welfare benefit plans:

a. The International Longshoreman's Association Local # 1969 ("ILA") was a union representing dock workers at the Port of Indiana in Portage, Indiana.

b. The ILA had a number of employee benefit plans for the benefit of its members, which plans were employee pension and welfare benefit plans subject to Title I of the Employee Retirement Income Security Act of 1974 (hereinafter collectively the "ILA Employee Funds").

c. The respondent held himself out as an investment advisor, available to provide advice intended to grow and preserve assets of individuals and entities, and as a licensed attorney, available to provide legal advice to individuals and entitles.

d. Michael A. Daher, Sr. owned a company called Leader in Marketing Fulfillment, Inc. ("LMF"), an entity set up to provide investment advice. It was intended that the respondent would share in profits of LMF. Some time in 1993, the Trustees of the ILA Employee Funds hired Daher, LMF and the respondent to act as investment advisors to the ILA Employee Funds. It was agreed that the ILA Employee Funds would pay a fee representing from 1.2% to 2.4% of the total assets under management. Daher and the respondent represented, and the Trustees believed, that this 1.2% to 2.4% fee was to be the total fee that Daher, LMF or the respondent would receive as a result of work done in connection with the ILA Employee Funds.

e. In or about June 1994, Daher and the respondent advised the Trustees to invest assets of the Pension Fund in a residential development known as Grapevine Villas Project, located in Mesquite, Nevada (the "Grapevine Project").

f. In or about July 1994, relying on the advice of Daher and the respondent, the Trustees agreed to loan to RODEVCO, Inc. money belonging to ILA Employee Funds for the Grapevine Project. Unknown to the Trustees, Daher and the respondent had made arrangements with RODEVCO to obtain more than the 1.2% to 2.4% annual fee. Unknown to the Trustees, RODEVCO had agreed to pay a fee for bringing the loan to the project (the "Point Payments").

g. While RODEVCO had initially agreed to pay only 10% as Point Payments, Daher and the respondent demanded and ultimately received, well in excess of 10%. From on or about July 19, 1994, through on or about February 2, 1996, Point Payments in the total amounts of approximately $1,049,000 were received. These funds represented money of the ILA Employee Funds that was intended to be loaned to advance the Grapevine Project, be secured in the Grapevine Project, and earn interest, not to be paid as undisclosed fees. In addition, Daher and the respondent convinced the Trustees to have the ILA Employee Funds make additional investments by purchasing land near the Grapevine Project, known as the Chardonnay Property. The ILA Employee Funds purchased this land for approximately $950,000 in August 1995. Daher and the respondent had arranged the purchase of this land in May 1995, for approximately $475,625, under the name of a nominee, and Daher and the respondent were the true sellers who prof-

ited personally from the sale to the ILA Employee Funds.

h. At some point the respondent decided to disclose at least some of what had been going on to representatives of the ILA Employee Funds. The respondent represented that although the respondent had received funds to which the respondent was not entitled, his role in obtaining those funds had been minimal. The respondent offered to assist the ILA Employee Funds in recovering improperly obtained funds, and the ILA Employee Funds agreed to pay him.

i. In exchange for assisting the ILA Employee Funds in resolving problems which were at least in part the respondent's own making, the respondent was paid $10,000 per month, beginning on or about November 1, 1995, through on or about April, 1998.

Dunsmoor provided the following factual basis for the 18 U.S.C § 1957 violation:

a. As a result of the funds received through the scheme perpetrated on the ILA by Daher and the respondent, on or about July 21, 1994, $260,000.00 in criminally derived finds was wired from the First Interstate Influx Corporation bank to an off shore bank account in the name of Webster and Dyrud at the National Bank of Anguilla. John Dyrud was an attorney in Anguilla that received money into his accounts for the personal benefit of Daher and the respondent.

b. In August 1994, the respondent entered into a contract to purchase an Irwin yacht for the price of $70,000.00 from the Institute of Marine Science, Inc. located in Lauderdale By The Sea, Florida.

c. To facilitate the purchase of the yacht with unlawfully derived funds, the respondent caused several facsimiles to be sent from Anguilla to Colorado and from Anguilla to Florida. On or about September 7, 1994, the respondent received a facsimile from Webster & Dyrud regarding the wire transfer of $69,100.00 from the account of Webster and Dyrud at the National Bank of Anguilla. On or about September 7, 1994, a second facsimile was sent from Webster & Dyrud to the Institute of Marine Science, Inc., regarding the wire transfer for the respondent. The facsimile stated that the money would be wired from the National Bank of Anguilla to the Institute of Marine Science, Inc., the following morning.

d. On or about September 8, 1994, Sun Bank South Florida received a wire transfer for the benefit of Institute of Marine Science, Inc., in the amount of $67,085.00 from the account of Webster and Dyrud at the National Bank of Anguilla.

e. Approximately a week later, on or about September 15, 1994, the Institute of Marine Science, Inc. president, Edward H. Conway signed a notarized Marine Bill of Sale for the sale of an Irwin Yacht to the respondent for the purchase price of $70,000.00. Thus, on or about September 8, 1994, in the Judicial District of Colorado, the respondent knowingly caused a monetary transaction in an amount greater than $10,000 from funds derived from specified unlawful activity for the purpose of purchasing an Irwin yacht.

On December 20, 2002, U.S. District Court Judge Allen Sharp of the Northern District of Indiana sentenced Dunsmoor. The District Court specifically found *inter alia* that Dunsmoor "used his position of trust as an attorney in the commission of such crimes." Dunsmoor was sentenced to a term of 18 months on both counts, to be followed by a single term of 3 years of supervised release. Dunsmoor was also ordered to pay mandatory restitution in the amount of $2,050,732 for forwarding to various pension plans, welfare plans, supplemental benefit plans, unions, and individuals.

## II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION

■ Dunsmoor's convictions on 18 U.S.C. § 664 and § 1957 conclusively established each element of those federal statutes for the purposes of these disciplinary proceedings. *See* C.R.C.P. 251.20(a).

■ Colo. RPC 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fit-

ness as a lawyer in other respects. C.R.C.P. 251.5(b) provides that grounds for discipline of attorneys includes any act or omission which violates the criminal laws of the United States. Dunsmoor engaged in criminal conduct by embezzling funds of employee pension and welfare benefit plans in violation of 18 U.S.C. § 664, and by money laundering in violation of 18 U.S.C. § 1957. The above criminal acts reflect adversely on Dunsmoor's honesty, trustworthiness or fitness as a lawyer in other respects. By such conduct, Dunsmoor violated Colo. RPC 8.4(b) and C.R.C.P. 251.5(b) authorizes the imposition of discipline.

ABA *Standard For Imposing Lawyer Sanctions* (1992 & Supp.1992) § 5.11 provides: Disbarment is generally appropriate when: "[a] a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft ... (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

■ Dunsmoor's misconduct was knowing and willful, involved misrepresentation and deceit, was dishonest, and seriously adversely reflected on his fitness to practice law. The misconduct violated two federal criminal statutes. ABA *Standard* § 5.11 is directly applicable to Dunsmoor's misconduct and suggests that disbarment is the appropriate sanction.

Colorado law also suggests that disbarment is the required sanction under these circumstances. *See People v. Kiely,* 968 P.2d 110, 112 (Colo.1998)(lawyer disbarred in reciprocal discipline proceeding based upon a conviction on one felony count of making a false statement on a credit application); *People v. Chappell,* 927 P.2d 829, 831 (Colo.1996) (attorney disbarred for aiding her client in a class five felony when the attorney assisted the client to violate a child custody order by leaving the state with her child); *People v. Terborg,* 848 P.2d 346, 347 (Colo.1993) (attorney disbarred for one count of bank fraud arising from his making lease agreements

with government entities and pledging or selling the lease agreements to different financial institutions in order to secure loans for a closely held corporation in which he had an interest); *People v. Schwartz,* 814 P.2d 793, 794 (Colo.1991) (attorney disbarred for conviction of bankruptcy fraud and conspiracy to commit bankruptcy fraud); *People v. Brown,* 726 P.2d 638, 639 (Colo.1986) (district attorney disbarred for conviction of second degree forgery, a class four felony; abuse of public records, a class one misdemeanor; and computer crime, a class four felony).

■ Pursuant to ABA *Standards* §§ 9.22 and 9.32 respectively, the Hearing Board considered aggravating and mitigating factors in arriving at the appropriate sanction. The facts deemed admitted in the Complaint established four aggravating factors pursuant to ABA *Standard* § 9.22. Dunsmoor had a dishonest or selfish motive, ABA *Standard* § 9.22(b); he engaged in a pattern of misconduct, ABA *Standard* § 9.22(c); he engaged in multiple offenses, ABA *Standard* § 9.22(d); and Dunsmoor also had substantial experience in the practice of law, having been admitted to the bar in 1981. ABA *Standard* § 9.22(i). In mitigation, Dunsmoor recognizes the wrongful and serious nature of his misconduct and is remorseful. ABA *Standard* § 9.32(*l*). In addition, other penalties and sanctions have been imposed against Dunsmoor for his actions. ABA *Standard* § 9.32(k). No evidence or argument was advanced that Dunsmore had prior discipline. ABA *Standards* § 9.32(a). The mitigating factors are insufficient to modify the required discipline of disbarment.

### III. *ORDER*

It is therefore ORDERED:

1. JOHN S. DUNSMOOR, attorney registration 11247, is DISBARRED from the practice of law effective immediately.

2. John S. Dunsmoor, is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have

five (5) days thereafter to submit a response thereto.