The PEOPLE of the State of Colorado, Complainant

v.

Steven J. MASCARENAS, Respondent.

No. 11PD008.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 27, 2011.

On August 26, 2011, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Margaret B. Funk appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Steven J. Mascarenas ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

**OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)**

### I. *SUMMARY*

Respondent engaged in an elaborate scheme to defraud the prospective purchaser of a store owned by Respondent's wife, thereby violating Colo. RPC 8.4(c). As a result of Respondent's dishonesty, the purchaser lost over five-hundred thousand dol-

lars. Respondent has neither paid a civil arbitration award to the victim nor participated in this disciplinary proceeding. The Court concludes that Respondent's flagrant and deleterious misconduct warrants disbarment.

## II. PROCEDURAL HISTORY

On November 23, 2010, the People petitioned the Colorado Supreme Court to immediately suspend Respondent based on his failure to cooperate in disciplinary investigations. Respondent did not participate in that proceeding, and the Colorado Supreme Court immediately suspended Respondent on December 13, 2010.

The People filed a complaint in this matter on February 9, 2011, alleging Respondent violated Colo. RPC 8.4(c). That day, the People mailed the complaint by certified and regular mail to Respondent's registered business address of 12021 Pennsylvania Avenue, Suite 201, Thornton, Colorado 80241.[1] The mail was returned to the People, and Respondent did not answer the complaint. On April 25, 2011, the People filed a motion for default, to which Respondent did not respond. The Court entered a default judgment against Respondent on June 6, 2011. Upon the entry of default, the Court deems the well-pled facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[2]

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

■ The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[3] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 21, 1986. He is registered upon the official records under attorney registration number 15612 and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.

In May 2009, Tom Roberts ("Roberts") sought to purchase a Subway sandwich store in Colorado. Roberts contacted Subway Development of Colorado ("SDC"), the regional representative of Doctor's Associates, Inc. ("DAI"), which is the national franchisor of Subway stores. SDC referred Roberts to Kathy Mascarenas, Respondent's wife.

Kathy Mascarenas agreed to sell Roberts the right to operate her Westminster Subway shop for $495,000.00. Respondent provided Roberts with a proposed contract he had drafted and persuaded Roberts to sign it. Respondent did not advise Roberts he was an attorney at that time or at any later date.

The contract listed as the seller an entity owned by Kathy Mascarenas but doing business as "Standley Lake Subway," even though DAI's franchise agreement was with Kathy Mascarenas. When executing the contract, Respondent did not inform Roberts that DAI had never granted approval for a corporation or a limited liability company to hold the store. Nor did Respondent disclose to Roberts that DAI's prior approval was required for any transfer of the right to operate the store or that DAI had a contractual right of first refusal of any contract for transfer. Respondent never gave the contract to DAI or SDC to obtain DAI's waiver of its right of first refusal or its prior approval of the transfer of the operating rights for the store.

As part of the sale of the Subway store, Respondent advised Roberts to wire an agreed-upon $100,000.00 deposit to Colorado Home Investments, LLC ("CHI"). Roberts did so on May 26, 2009, followed by additional wire transfers made at Respondent's request totaling $350,000.00. The last of those transfers took place on July 16, 2009. Roberts was to pay the remainder of the store's purchase price by March 1, 2010.

Respondent and his wife turned over possession of the shop to Roberts around July 15 or 16, 2009, assuring him he was now the store's owner. Roberts operated the store

---

1. The People also mailed the complaint to an additional possible address they had obtained for Respondent: 8381 Circle Drive, Westminster, Colorado 80031. This mailing was returned.

2. *See* C.R.C.P. 251.15(b); *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

3. *See* the People's complaint for further detailed findings of fact.

for nearly three months, working long hours and investing about $18,300.00 of his own funds for upgrades. The store performed well and gained value under his direction. During this time, Respondent and Kathy Mascarenas maintained signing authority on a bank account for the store, telling Roberts they needed such authority to assist him with the ownership transition.

On October 3 or 4, 2009, without warning to Roberts but with her husband's knowledge, Kathy Mascarenas locked Roberts out of the store and withdrew all of the funds held in its operating account. Respondent and his wife have neither returned possession of the store to Roberts nor restored any of the funds withdrawn from the store's operating account. By the time Kathy Mascarenas reassumed physical possession of the shop, Roberts had invested $468,300.00 in its purchase and operation.

Around this time, Respondent also directed CHI to quitclaim deed CHI's only hard asset—real property that had been valued at $270,000.00—for negligible consideration to another company owned by Kathy Mascarenas. Respondent then withdrew most of the cash Roberts had wired to CHI. These actions left CHI essentially judgment-proof.

In early October 2009, Roberts filed a civil action in Jefferson County District Court against Standley Lake Subway, Respondent, Kathy Mascarenas, and related parties. The judge granted the defendants' motion to stay the action and compel arbitration. An arbitrator then awarded Roberts compensatory damages of $450,000.00 plus interest, consequential damages of $18,300.00 plus interest, $66,000.00 in attorney's fees, and $2,000.00 in arbitration fees. The arbitrator also granted Roberts, pending satisfaction of his award, a constructive trust and equitable lien against any proceeds of the sale by Kathy Mascarenas, and against any person or entity holding either proceeds derived from Roberts's wire transfers of $450,000.000 or property obtained or improved through the use of such proceeds. Roberts has not yet succeeded in collecting the award.

4. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

The People allege—and the Court's order of default establishes—that Respondent violated Colo. RPC 8.4(c), which interdicts conduct involving dishonesty, fraud, deceit, or misrepresentation. Respondent's dishonesty manifested itself in numerous ways: Respondent negotiated a sale contract he knew to contravene his wife's other contractual obligations; he failed to advise Roberts of that knowledge; he failed to inform Roberts he was an attorney when drafting and proposing the contract; he conspired with his wife to fraudulently induce Roberts to pay them $450,000.00 for the Subway store, even though they never intended to sell Roberts the store; he asked Roberts to wire payments for the store to a bank account owned exclusively by a shell company and then quitclaimed that company's hard assets to another company his wife owned; he engaged in behavior intended to evade Roberts's anticipated collection efforts; and he conspired with his wife to repossess the store and empty its operating account without legal justification or authority.

## IV. *SANCTIONS*

 The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[4] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* By engaging in dishonest and fraudulent dealings with an unsuspecting member of the public, Respondent violated a duty to the public to maintain his personal integrity. As explained in ABA Standard 5.0, "The most fundamental duty which a lawyer owes the public is the duty to maintain the stan-

dards of personal integrity upon which the community relies."

*Mental State:* As established by the order of default, Respondent intentionally defrauded Roberts.

*Injury:* Respondent's dishonesty caused Roberts serious harm. The arbitrator in this matter found Roberts had incurred $536,300.00 in damages, attorney's fees, and arbitration fees. Moreover, Roberts testified that Respondent's conduct "destroyed" his family, "pulling the rug out from under" his family's feet, particularly in light of his wife's pregnancy. Not only did Roberts lose an enormous sum of money, but he wasted the significant time he spent managing the store and attempting to track down and obtain restitution from Respondent. Roberts also noted that his ten employees lost their jobs upon his dispossession of the store. Finally, Respondent's appalling misconduct tarnished the reputation of the legal profession. As ABA *Standard* 5.0 observes, "the public expects the lawyer to be honest and to abide by the law," and dishonest conduct by a lawyer can shake public confidence in the bar.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[5] The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction. Because Respondent did not participate in the disciplinary proceeding, the Court is aware of just one mitigating circumstance here—imposition of other penalties.

*Prior Disciplinary Offenses—9.22(a):* In 2004, Respondent received three suspensions lasting three months each, one of which was fully stayed.

*Dishonest and Selfish Motive—9.22(b):* The Court concludes Respondent acted with a dishonest and selfish motive by defrauding Roberts for his own benefit.

*Pattern of Misconduct—9.22(c):* Respondent's dishonesty in this matter manifested on numerous occasions over a period of many months.

*Bad Faith Obstruction of the Disciplinary Proceeding—9.22(e):* Respondent failed to participate in this proceeding and the underlying investigation, resulting in his immediate suspension under C.R.C.P. 251.8.6.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* Respondent's disregard for his misconduct is made plain by his failure to participate in this proceeding and his refusal to pay Roberts the civil arbitration award.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the bar in 1986. The misconduct at issue here particularly ill-befits such a long-standing practitioner.

*Indifference to Making Restitution—9.22(j):* Respondent has made no restitution to Roberts, despite an arbitrator's order to do so.

*Imposition of Other Penalties or Sanctions—9.32(k):* The civil arbitration award imposed against Respondent is a separate penalty that the Court considers in mitigation. Given Respondent's failure to pay the award as ordered, however, this mitigating factor merits little weight here.

### Analysis Under ABA *Standards* and Colorado Case Law

ABA *Standard* 5.11(b) provides that disbarment is generally appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. The Court has little trouble concluding that Respondent's conduct renders him wholly unfit to practice law. Given the relative dearth of mitigating factors here, no departure from the presumptive sanction of disbarment is appropriate pursuant to ABA *Standard* 5.11(b).

Colorado Supreme Court case law regarding comparable factual circumstances accords with the ABA *Standards*. Where selfishly

---

5. *See* ABA *Standards* 9.21 & 9.31.

motivated attorneys have engaged in significant dishonest conduct in the context of financial transactions or obligations, the Colorado Supreme Court has generally imposed disbarment, except where mitigating factors have carried substantial weight.[6]

In short, the ABA *Standards* and Colorado case law both call for disbarment in this matter, and Respondent's failure to take part in this disciplinary proceeding only reinforces our conclusion that disbarment is warranted.

## V. CONCLUSION

Admission to the Colorado bar obligates attorneys to adhere to high moral and ethical standards. "Truthfulness, honesty, and candor are core values of the legal profession. Lawyers serve our system of justice as officers of the court, and if lawyers are dishonest, then there is a perception that the system must also be dishonest."[7] In this matter, Respondent intentionally engaged in an unconscionable scheme to defraud an innocent person of a half-million dollars. He not only significantly harmed the victim of this stratagem but also flouted his professional duty of honesty, bringing opprobrium upon the broader legal community. As a result, the Court disbars Respondent.

## VI. ORDER

The Court therefore **ORDERS**:

1. **STEVEN J. MASCARENAS,** attorney registration number 15612, is **DISBARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[8]

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before October 17, 2011.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within five days, unless otherwise ordered by the Court.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fifteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than ten days thereafter.

4. Respondent **SHALL** pay to Roberts in restitution the amount currently owed to Roberts under the aforementioned arbitration order within thirty days of the "Order and Notice of Disbarment."

6. *See, e.g., In re DeRose,* 55 P.3d 126, 130–31 (Colo.2002) (disbarring an attorney who intentionally and dishonestly structured financial transactions to avoid federal reporting requirements); *People v. Jackson,* 943 P.2d 450, 457 (Colo.1997) (disbarring a lawyer who engaged in fraudulent real estate transactions); *People v. Odom,* 941 P.2d 919, 920–22 (Colo.1997) (disbarring an attorney who knowingly removed from the State of Colorado an automobile subject to a security interest); *People v. Rudman,* 948 P.2d 1022, 1022, 1026–28 (Colo.1997) (holding that a lawyer who actively misrepresented to the beneficiary of an estate the disposition of certain of the decedent's assets and his own interests in a corporation of which the decedent had been a shareholder should be suspended for three years, but noting that disbarment would have been appropriate if not for the presence of mitigating factors). The Court observes that the absence of an underlying criminal conviction is not important for disciplinary purposes. *People v. Chappell,* 927 P.2d 829, 831 (Colo.1996).

7. *DeRose,* 55 P.3d at 131 (citing *In re Pautler,* 47 P.3d 1175, 1178–79 (Colo.2002)).

8. In general, an order and notice of sanction will issue thirty-one days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-one days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.