**The PEOPLE of the State of Colorado, Complainant,**

v.

**Richard Tell WEHRLE, Respondent.**

**No. 06PDJ006.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 20, 2007.

**OPINION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19**

On January 16, 2007, a Hearing Board composed of Michael B. Lupton, a member of the public, Mickey W. Smith, a member of the Bar, and William R. Lucero, the Presiding Disciplinary Judge ("the Court"), held a

Sanctions Hearing pursuant to C.R.C.P. 251.18(d). Charles E. Mortimer, Jr. appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Richard Tell Wehrle ("Respondent") did not appear, nor did counsel appear on his behalf. The Hearing Board issues the following Opinion and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19.

## I. *ISSUE*

Disbarment is generally appropriate, absent significant evidence of mitigation, when a lawyer knowingly converts client funds and causes injury. Respondent, the personal representative of an estate, directly and indirectly deposited $515,285.00 into his personal account from an estate's account without authority or explanation. Respondent did not participate in these proceedings and provided no evidence of mitigation to offset several aggravating factors. Is disbarment the appropriate sanction in this case?

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

## II. *PROCEDURAL HISTORY AND FACTUAL BACKGROUND*

The People filed a complaint in this matter on June 6, 2006. Respondent filed an answer on July 25, 2006. The Court granted summary judgment in favor of the People on the lone count in the complaint on January 4, 2007.

The Hearing Board hereby adopts and incorporates by reference the Court's factual findings from the "Order Re: Motion for Summary Judgment" dated January 4, 2007. Respondent took and subscribed the oath of admission and gained admission to the Bar of the Colorado Supreme Court on April 23, 1968. He is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 03369 and is therefore subject to the jurisdiction of the Court.

In December of 2003, Respondent was appointed personal representative for the Estate of Marjorie M. Elliott ("the Estate"). Helene Hebenstreit was the sole beneficiary of the Estate pursuant to a will left by Ms. Elliott. Respondent admitted that he trans-ferred funds from the Estate's account to his business or trust accounts without authority.

By letter accounting dated May 10, 2004, Respondent advised interested parties that deposits on behalf of the Estate totaled $476,885.25. These funds were placed in an account at American National Bank. By letter dated September 17, 2004, Respondent advised interested parties that an additional $210,796.03 in Estate funds had been deposited into the Estate account at American National Bank. The total value of the assets of the Estate reported by Respondent was approximately $687,681.28.

Respondent produced documents showing total Estate expenses, including attorney's fees for himself, of approximately $104,688.12. Subtracting the Estate expenses [$104,688.12] from Estate deposits made to the Estate's account at American National Bank [$687,681.28], the Estate account should have approximately $582,993.16.

Respondent opened two bank accounts for the Estate, a money market account and a checking account, at American National Bank. Based upon the investigation performed by investigator Laurie Ann Seab, including review of bank records related to accounts owned by Respondent at Centennial Bank and Trust, Compass Bank, and Community Bank:

1. Funds belonging to the Estate could be traced into various accounts owned by Respondent, including accounts maintained at Compass Bank, Centennial Bank, and Community Banks of Colorado;

2. During the time period from January 1, 2004 to May 1, 2006, Respondent transferred $141,900.00 directly from the Estate accounts into his personal account at Centennial Bank;

3. During the time period from February 12, 2004 to December 27, 2004, Respondent transferred, via check and wire, the total amount of $401,520.97 from the Estate accounts into his COLTAF account at Compass Bank. During the time period from January 2004 to February 2005, Respondent transferred $150,370.00 of those funds

from his Compass Bank COLTAF account to his personal account at Centennial Bank. The remaining Estate funds deposited in the Compass COLTAF account have been transferred out of that account to unknown recipients;

4. During the time period from June 2005 to April 2006 Respondent transferred $212,720.00 into a COLTAF account at Community Bank. During the time period from June 2005 to April 2006 Respondent transferred $208,015.00 from the Community Bank COLTAF account to his personal account at Centennial Bank;

5. During the time period from June of 2005 to January of 2006, Respondent transferred $173,610.00 from his personal account to the Estate accounts. However, by December 23, 2005, the total amount on deposit in the Estate accounts was $138.06 due to withdrawals of $173,610.00 out of the Estate accounts, which cannot be traced; and

6. A total of $515,285.00 in deposits into Respondent's personal account at Centennial Bank can be traced to Estate Funds.

Respondent admitted, under oath, that he exercised personal dominion and control over property belonging to the Estate by transferring money from the Estate account to his trust or business account. Respondent testified that he intends to pay back the money from the Estate he used "appropriately or inappropriately." Respondent exercised his Fifth Amendment privilege when asked during the deposition to account for missing Estate funds.

### III.  *SANCTIONS*

■ The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

■ Respondent's failure to participate in these proceedings leaves the Hearing Board with no alternative but to consider only the established facts and rule violations set forth in the summary judgment order in evaluating the first three factors listed above. The Hearing Board finds Respondent violated duties owed to his clients, the public, and the legal system. Respondent specifically violated his duty to preserve the property of his client and he failed to maintain his personal integrity. The entry of summary judgment established that Respondent *knowingly* engaged in this conduct and caused significant actual harm to his client.

The People alleged and the Hearing Board finds several aggravating factors exist including dishonest or selfish motive, a pattern of misconduct, and substantial experience in the practice of law. *See* ABA *Standards* 9.22(b), (d) and (i). Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent presented no evidence in mitigation. However, the Hearing Board notes Respondent has no prior disciplinary record. *See* ABA *Standard* 9.32(a).

The ABA *Standards* suggest that the presumptive sanction for the misconduct evidenced by the admitted facts and rule violations in this case is disbarment. The undisputed facts show Respondent knowingly converted at least a portion of the funds belonging to the Estate. Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. ABA *Standard* 4.11.

■ Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996). Neither the lawyer's motive in taking the money, nor the lawyer's

intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes. *Id.* at 10–11. Significant mitigating factors may overcome the presumption of disbarment, however, none are presented in this case. *See In re Fischer*, 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation).

Respondent's conversion of the Estate funds alone warrants disbarment. His complete failure to participate in these proceedings further precludes any deviation from the presumptive sanction.

## IV. *CONCLUSION*

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, without explanation or mitigation, reveal the serious danger Respondent poses to the public. He knowingly converted client funds and this misconduct adversely reflects on his fitness to practice law. Upon consideration of the ABA *Standards* and Colorado Supreme Court case law, the Hearing Board concludes there is no justification for a sanction short of disbarment.

## V. *ORDER*

The Court therefore **ORDERS:**

1. RICHARD TELL WEHRLE, Attorney Registration No. 03369, is **DISBARRED** from the practice of law, effective thirty-one (31) days from the date of this Order, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. RICHARD TELL WEHRLE **SHALL** pay restitution to the Estate of Marjorie M. Elliott, in the amount of $582,993.16; with credit for any amount Respondent has already paid.

3. RICHARD TELL WEHRLE **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.