The PEOPLE of the State of
Colorado, Complainant

v.

Chad Christopher SOLIZ, Respondent.

No. 09PDJ093.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

June 30, 2010.

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *ISSUE AND SANCTION*

Disbarment is generally appropriate when a lawyer knowingly converts property belonging to a client or third-party and causes injury or potential injury. Notwithstanding an earlier admission of misconduct involving conversion of client funds, Respondent consumed funds paid to him by two separate clients prior to the completion of services to be performed. In each case, Respondent knowingly exercised unauthorized dominion and control over funds belonging to his clients and caused them injury.

After considering the nature of Respondent's misconduct, as well as the significant aggravating factors—with few countervailing mitigators—the Court finds the appropriate sanction for Respondent's misconduct is disbarment.

### II. *PROCEDURAL HISTORY*

On October 28, 2008, in case 08PDJ099, Respondent stipulated to a six-month suspension, with the requirement of reinstatement proceedings pursuant to C.R.C.P. 251.29(c)-(e). Respondent admitted in the stipulation he had converted client funds by depositing those funds into a business account and then personally consuming the funds before he had earned them.

Less than one year later, on October 20, 2009, the People filed a citation and complaint in the instant matter, alleging similar misconduct. Respondent failed to answer the complaint, and the Court granted a motion for default on January 5, 2010. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

### III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaint.[2] Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on October 25, 1999. He is registered upon the official records, Attorney Registration No. 31327, and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.

### The Keffer Matter

In January 2008, Brawley Sage Keffer ("Keffer"), acting on behalf of a third party, contacted Respondent concerning representation in connection with a patent application. Respondent sent a fee agreement to Keffer. On September 4, 2008, Respondent mailed a letter to Keffer indicating he required a $6,000.00 retainer payment, plus additional court costs, to file the application. That same letter also set forth a schedule making clear Respondent would file the application by October 6, 2008. Keffer mailed Respondent the $6,000.00 fee payment in late September, and Respondent acknowledged receiving the payment soon thereafter.

Although Respondent began to prepare the application, he was unable to do so within the time frame set forth in the original September 4, 2008, letter. On October 23, 2008, Respondent emailed Keffer to apologize for the delay and to promise a draft of the application in the immediate future. On November 12, 2008, Respondent promised to have a draft prepared by November 18, 2008, and a final application filed by December 3, 2008. On December 1, 2008, Respondent promised to have a final draft to Keffer on that date. Finally, on December 3, 2008, Respondent mailed a draft application to Keffer. Keffer, however, was dissatisfied with the work and terminated Respondent's services on December 10, 2008.

Respondent did not complete the legal services for which he was retained. Instead, Respondent consumed Keffer's entire retainer prior to completion of the work. In addition, by the date of his termination, Respondent had not notified Keffer that his license to practice law in Colorado had been sus-

---

1. *See People v. Richards*, 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

2. *See* the People's complaint in 09PDJ093 for further detailed findings of fact.

pended as of December 5, 2008; Respondent failed to send the required notice to Keffer until January 19, 2009.

■ By failing to represent Keffer diligently and promptly, Respondent violated Colo. RPC 1.3. Further, Respondent violated Colo. RPC 1.15(a) and (c) by failing to safeguard Keffer's funds in trust until the funds he had earned them, and by failing to account to Keffer for consumption of the funds. Respondent also engaged in conduct involving dishonesty in violation of Colo. RPC 8.4(c) in two distinct respects: he knowingly exercised unauthorized dominion and control over funds belonging to Keffer; and he failed to notify Keffer of the suspension of his license to practice law in the State of Colorado.

### The Thieman Matter

Respondent and his client Scott Thieman ("Thieman") had an attorney-client relationship dating back to March 2007. On December 31, 2008—after Respondent's license to practice law in Colorado had been suspended by the Colorado Supreme Court—Respondent received from Thieman a $5,000.00 flat-fee for the preparation and filing of a non-provisional application for patent. Respondent did not deposit Thieman's flat-fee in his trust account, but instead deposited the funds in his business checking account. These funds were entirely consumed by the end of January 2009. Only after the flat-fee had been paid, on January 19, 2009, did Respondent mail Thieman a letter disclosing that Respondent's license to practice law in Colorado had been suspended on December 5, 2008.

On March 15, 2009, Thieman contacted Respondent to remind him that the deadline established by the patent office for filing the patent application was April 7, 2009. The parties set a tentative date of March 20, 2009, to review a draft application. On March 27, 2009, Thieman again contacted Respondent to point out the March 20, 2009, date had been missed and to remind him of the pending deadline. Thieman thereafter sent telephonic messages and emails to Re-

spondent in late March 2009. In response, Respondent scheduled but then canceled appointments for April 1, 2 and 4, 2009.

On April 5, 2009, Respondent again scheduled an appointment for an April 6, 2009, meeting, one day before the deadline for filing the application. On April 6 and 7, 2009, Respondent emailed documents to Thieman for review. By that time, Thieman had retained new counsel to represent him in the patent application process and attempted to review the documents with new counsel, but he was unable to do so in the short time frame provided. On the evening of April 7, 2009, Respondent emailed Thieman to tell him he had filed the application, even though he had not heard from Thieman concerning the quality of work, nor had he received authorization from Thieman to make the filing. Later that evening, Thieman emailed Respondent expressly terminating his representation.

By failing to represent Thieman diligently and promptly, Respondent violated Colo. RPC 1.3. Further, Respondent violated Colo. RPC 1.15(a) and (c) by failing to safeguard Thieman's funds in trust until the funds were earned, and by failing to account to Thieman for consumption of the funds. Respondent also engaged in conduct involving dishonesty in violation of Colo. RPC 8.4(c) in two distinct respects: he knowingly exercised unauthorized dominion and control over funds belonging to Thieman; and he failed to notify Thieman of the suspension of his license to practice law.

### IV. *SANCTIONS*

■ The ABA Standards for Imposing Lawyer Sanctions ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[3] In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

---

**3.** *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

## ABA *Standard* 3.0—Duty, Mental State, and Injury

■ Respondent violated a duty to his clients, which arises out of the nature of the basic relationship between the lawyer and the client.[4] Specifically, Respondent failed to preserve and safekeep the property of his clients, failed to exercise diligence in performing legal services on their behalf and failed to timely notify them of the suspension of his license to practice law in Colorado. He also exercised unauthorized dominion and control over funds belonging to his clients.

In both the Keffer and Thieman matters, the order of default establishes that Respondent knowingly exercised unauthorized dominion and control over funds belonging to his clients, in violation of Colo. RPC 8.4(c).[5] The People also point to Respondent's October 28, 2008, stipulation in case 08PDJ099 as evidence of his knowing conduct. In that case, Respondent was disciplined for similar behavior, including a lack of diligence, a failure to account for funds consumed and conversion of client funds. Given that Respondent's misconduct in the Thieman matter occurred in its entirety after Respondent had signed that stipulation, the People argue—and the Court agrees—that Respondent's conduct in the Thieman matter, at a minimum, was demonstrably "knowing."

Although the Court does not attribute to Respondent any conscious objective to cause particular injury to his clients, he nevertheless caused actual financial harm to both Keffer and Thieman. At the sanctions hearing, Keffer testified Respondent never returned his $6,000.00 fee. He also testified Respondent's lack of diligence substantially delayed the filing of his patent application, resulting in his forced abandonment of the application. Keffer claimed that, during the fall of 2008, the patent office changed its policies and restricted issuance of the "business method patent" he sought; Keffer felt

that due to Respondent's delays, he lost the opportunity to apply for the patent, which he thought he otherwise could have obtained. Thieman, likewise, testified to the harm caused by Respondent's conduct. Respondent failed to refund Thieman's $5,000.00 retainer, and Thieman was also forced to pay another attorney an additional $2,600.00 to complete and file his patent application at the last minute.

### ABA *Standard* 3.0—Aggravating & Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed.[6] Mitigating circumstances include any considerations or factors that may justify a reduction in the degree of discipline to be imposed.[7] The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

#### *Prior Disciplinary Offenses—9.22(a)*

As discussed above, Respondent was sanctioned in case 08PDJ099, accepting a six-month suspension for comparable misconduct.

#### *Dishonest or Selfish Conduct—9.22(b)*

Respondent exercised unauthorized dominion and control over funds belonging to his clients and consumed those funds without rendering services of commensurate value in exchange. The Court concludes Respondent engaged in dishonest and selfish conduct.

#### *A Pattern of Misconduct—9.22(c)*

Respondent's misconduct, while perhaps not yet appropriately characterized as a pattern, affected both Keffer and Thieman in similar ways: Respondent secured payment, neglected his representation, consumed monies he had not yet earned and failed to

---

4. *See* ABA *Standard* 4.0.

5. *See* ABA *Standards, Definitions.* "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

6. *See* ABA *Standard* 9.21.

7. *See* ABA *Standard* 9.31.

return client funds. The Court is troubled by the similarity of Respondent's behavior in each case and takes note of what appears, on its face, to be an incipient practice.

*Personal or Emotional Problems—9.32(c)*

Although C.R.C.P. 251.15(b) appears to proscribe Respondent's introduction of additional evidence at his sanctions hearing once a default on the underlying claims has been entered, the Court construes this wording liberally to allow for consideration of additional mitigating factors not mentioned by the People.[8] In this instance, Respondent presented argument that the sanctions decision should be informed by Respondent's recent personal and emotional problems, which may, in part, have led to his misconduct. Specifically, Respondent cited his pregnant wife's frequent hospitalizations for Khron's disease, compounded with his own bouts of depression, as contributing to his neglect of client matters. Respondent argued that although he is in counseling now, he felt overwhelmed by the "snowball effect" during the time of his misconduct and therefore "kind of gave up." However, Respondent presented no evidence to support these arguments.

*Remorse—9.32(l)*

The Court is cognizant that Respondent failed to appear for the hearing to defend against the claims brought by the People, leading to this Court's order of default. Yet Respondent appeared for his sanctions hearing, which the Court interprets as progress toward acknowledging his misconduct and addressing its root causes. In addition, Respondent apologized to Keffer and Thieman at the sanctions hearing and vowed to do what he could to right his wrongs. But because the Court is not aware of any efforts by Respondent to make restitution or to take affirmative steps to rectify the consequences of his misconduct, the Court accords Respondent's expressions of remorse little weight as a mitigating factor.

### Analysis Under ABA *Standards* and Colorado Case Law

In light of the order of default, which established that Respondent knowingly violated Colo. RPC 8.4(c), the Court concludes the following ABA *Standard* is applicable:

> Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.[9]

 Colorado Supreme Court case law applying the ABA *Standards* also holds that disbarment is the presumptive sanction for conversion of client or third-party funds.[10] Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking."[11]

Significant mitigating factors may overcome the presumption of disbarment,[12] but the few at work in this case do not rise to the level of justifying a reduction in the sanction imposed.[13] Indeed, because the Court has no reliable evidence that Respondent has, in fact, suffered from the personal and emotional problems discussed above, this mitigating factor is particularly unsatisfactory in ration-

---

8. "Notwithstanding the entry of a default, the Regulation Counsel shall give the respondent notice of the final hearing, at which *the respondent may appear and present arguments* to the Hearing Board regarding the form of discipline to be imposed." C.R.C.P. 251.15(b) (emphasis added).

9. *See* ABA *Standard* 4.11.

10. *See e.g. People v. Dice*, 947 P.2d 339 (Colo. 1997) (attorney took funds in five separate estate, trust, and conservative matters while acting as a fiduciary); and *People v. Robnett*, 859 P.2d 872 (Colo.1993) (attorney disbarred for converting monies belonging to a trust for which he was the trustee and engaging in deception of his client).

11. *See People v. Varallo*, 913 P.2d 1, 11 (Colo. 1996).

12. *See In re Fischer*, 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation to justify suspension, rather than disbarment)

13. *See People v. Guyerson*, 898 P.2d 1062, 1064 (Colo.1995) (concluding presence of substantial personal and emotional problems, cooperation with the hearing board, presence of remorse and evidence of respondent's good character insufficient to overcome presumption of disbarment for conversion).

alizing a variance from the presumed sanction. On the other side of the ledger, the Court is significantly influenced by the 9.22(a) and (c) aggravators (prior disciplinary offenses and a pattern of misconduct); the striking similarity between the Keffer and Thieman matters, as well as the parallels to Respondent's conduct in case 08PDJ099, convince the Court that protection of the public necessitates imposition of disbarment.

## V. *CONCLUSION*

Respondent's conduct in the Keffer and Thieman matters is disquieting: in each case, Respondent took a retainer, consumed those funds, but failed to diligently work on the matter, resulting in significant monetary injury to both men and the loss to Keffer of a potentially lucrative business opportunity. And while the Court was impressed by the courage and humility it must have taken for Respondent to appear at his sanctions hearing after entry of the order of default, it cannot ignore Respondent's prior disciplinary action and the pattern of misconduct here. The aggravating factors are too serious to justify deviation from the presumed sanction, and therefore the Court concludes Respondent should be disbarred from the practice of law.

## VI. *ORDER*

The Court therefore **ORDERS**:

1. Chad Christopher Soliz, Attorney Registration No. 31327, is hereby **DISBARRED** from the practice of law, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado. The disbarment **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).
2. Respondent **SHALL** pay restitution of $6,000.00 to Brawley Sage Keffer and $5,000.00 to Scott Thieman or, in the alternative, reimburse the Colorado Attorney's Fund for Client Protection for all proceeds that may be paid to these named clients.
3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.