**The PEOPLE of the State of Colorado, Complainant,**

v.

**John Joseph ZODROW, Respondent.**

**No. 10PDJ132.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 15, 2011.

On October 14, 2011, WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("the Court") held a C.R.C.P. 251.15(b) sanctions hearing. Adam J. Espinosa appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and John Joseph Zodrow ("Respondent") failed to appear at the sanctions hearing. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *SUMMARY*

Respondent violated Colo. RPC 1.3, 1.4(a)(3), 3.4(c), 5.5, and 8.4(c) by practicing law while suspended, failing to notify his clients and opposing counsel of his suspension, and making misrepresentations in his C.R.C.P. 251.28 affidavit concerning his ef-

forts to wind up his practice.[1] Considering the nature of Respondent's misconduct and its consequences, the Court finds the appropriate sanction for Respondent's misconduct is disbarment.

## II. *PROCEDURAL HISTORY*

The People filed a complaint in this matter on December 15, 2010, setting forth eleven claims for relief based on alleged violations of Colo. RPC 1.3, 1.4(a)(3), 3.4(c), 5.5, and 8.4(c). The People mailed the complaint on the same day by certified and regular mail to Respondent's registered business address.[2] Thereafter, the People filed with the Court a "Proof (Attempted Service)" on January 31, 2011.[3]

The People then sent Respondent a letter by regular and certified mail and by email on March 2, 2011, advising him that they had not received his answer to the complaint, that the answer was due on January 7, 2011, and that they would move for default if he did not file an answer within ten days.[4] On March 15, 2011, the People filed a motion for default, to which Respondent did not respond.[5] Respondent answered the complaint on April 11, 2011, without explaining his three-month delay.[6] In his answer, Respondent denied neither that his registered address is the Nichols–Littleton address nor that he was subject to this jurisdiction of this Court, and he offered the sole affirmative defense that the People "did not comply with conditions precedent to this action."

On May 3, 2011, the People filed a motion to strike Respondent's answer as untimely and again asked for default. On June 16, 2011, the Court granted the People's motion to strike and entered default on all claims in the People's complaint.

A sanctions hearing was originally set in this matter for September 1, 2011. Upon Respondent's motion to continue the sanctions hearing due to a schedule conflict, filed August 29, 2011, the Court held a status conference on August 31, 2011, at which time the Court rescheduled the hearing for September 7, 2011. On September 7, 2011, before the Court commenced the sanctions hearing, Respondent argued for the first time that the Court lacked personal jurisdiction over him and that he was improperly served with process. The Court postponed the sanctions hearing and ordered the parties to brief their arguments regarding personal jurisdiction and service of process.

Respondent filed a "Motion to Dismiss for Insufficiency of Service of Process" on September 19, 2011, and the People responded on September 26, 2011. Respondent asserted that the People disregarded C.R.C.P. 251.32(b) because they neither served him personally with the complaint nor sent it by certified mail to a later known address.[7] The

1. After his suspension, Respondent was required to file an affidavit pursuant to C.R.C.P. 251.28(d). The Court notes that the People refer to Respondent's affidavit as a " 'C.R.C.P. 251.29' affidavit" in their complaint and sanctions brief. It appears that Respondent filed an incorrectly captioned affidavit with the People.

2. Respondent registered 2748 East Nichols Circle, Littleton, Colorado 80122 ("Nichols–Littleton address") with the Colorado Supreme Court Office of Attorney Registration ("OAR") in 2005. The People mailed the complaint to the Nichols–Littleton address. Respondent never claimed receipt of the mailing.

3. In 2009, Respondent informed OAR that his place of business had changed from an address on Sherman Street to 2748 East Nichols Circle, Centennial, Colorado 80122 ("Nichols–Centennial address"). On November 2, 2010, Respondent again updated his address with OAR, selecting the Nichols–Littleton address as his preferred mailing address for all correspondence. That

same day, however, Respondent filed with the Court a "Change of Address of Petitioner" in case number 10PDJ089, providing as his new address the Nichols–Centennial address. Between November 2, 2010, and November 20, 2011, Respondent had not informed OAR of any new address.

4. The People mailed the letter to Respondent at the Nichols–Centennial address.

5. The People mailed a copy of the motion to Respondent, at both the Nichols–Centennial address and the Nichols–Littleton address

6. Respondent's answer is dated April 5, 2011, but was not filed with the Court until April 11, 2011. The Nichols–Centennial address is listed in the answer's caption.

7. Specifically, he argued that the People only sent the complaint by certified mail to the Nichols–Littleton address, even though his November

People maintained that they complied with C.R.C.P. 251.32(b), that Respondent waived the defense of lack of personal jurisdiction by neglecting to raise it in his answer, and that the fact Respondent filed an answer—albeit late—establishes he was served with the complaint.[8] On September 29, 2011, the Court denied Respondent's motion to dismiss, concluding that the People satisfied C.R.C.P. 251.32(b) by serving the complaint via certified mail to Respondent at his last known address and that Respondent waived any defense of lack of personal jurisdiction by filing an answer in which he admitted he was subject to the jurisdiction of the Court and neglected to raise any defenses of lack of personal jurisdiction or insufficient service of process. The Court continued the sanctions hearing until October 14, 2011.

On September 30, 2011, the People filed a "Motion to Clarify" bringing to the Court's attention that the certified mailing dated March 2, 2011, which was sent to Respondent at the Nichols–Centennial address and returned to the People with the word "REFUSED" marked upon it, was actually refused by the postal service and not Respondent.[9] This is contrary to what was stated in the Court's order of September 29, 2011; and the People request that the Court clarify its order to reflect this factual change. The Court has orally granted this motion at the October 14, 2011, sanctions hearing and now

issues a written order in section VI of this opinion and decision.

Upon the entry of default, the Court deems the facts set forth in the complaint admitted and all well-pled rule violations established by clear and convincing evidence.[10] At the sanctions hearing, the Court heard testimony from Donna Hunt[11] and admitted the People's exhibit 1.

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaint.[12] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 13, 1993, under attorney registration number 22706.[13] He is thus subject to the jurisdiction of the Court in these disciplinary proceedings.[14]

### Donna Griffin Matter

In April 2006, Donna Griffin ("Griffin") hired Respondent to represent her in a medical malpractice action against her chiropractor, Kenneth Ray ("Ray"). Griffin believed Ray had injured her back and neck during treatment. Respondent waited until August 15, 2007, to request Griffin's medical records from Ray. He received the records on September 1, 2007. Even though the medical records indicate that Ray last treat-

---

2, 2010, "Change of Address of Petitioner" had informed them of the Nichols–Centennial address. Respondent claimed that no "leeway" should be given in judging compliance with service of process rules and that the People had the burden to establish all facts essential to jurisdiction.

8. In addition, the People contended that Respondent falsely represented to the Court during the hearing on September 7, 2011, that the Nichols–Centennial address was his current address. In support, the People attached to their response an affidavit of Courtney Krugman, who attested she was the sole owner and resident of the townhome located at the Nichols–Centennial address, which she purchased on July 29, 2011. Moreover, Respondent's probation officer averred in an affidavit that Respondent provided him the address of 6730 South Glencoe Street, Littleton, Colorado 80122 on February 14, 2011, and that Respondent never updated his address.

9. At the hearing, the People indicated that they discovered this fact contemporaneously with the Court's order.

10. *See People v. Richards*, 748 P.2d 341, 346 (Colo.1987); C.R.C.P. 251.15(b).

11. Donna Hunt was formally known as Donna Griffin.

12. *See* the People's complaint for further detailed findings of fact.

13. In their sanctions brief, the People indicate that Respondent's registered business address is the Nichols–Centennial address. However, on November 21, 2011, Respondent filed a notice regarding a change of address with the Court indicating that his address is now P.O. Box 2522, Littleton, Colorado 80161.

14. *See* C.R.C.P. 251.1(b).

ed Griffin on March 20, 2006, Respondent did not file a civil complaint until more than two years later, on March 26, 2008.[15] Ray raised a statute of limitations defense in his June 19, 2008, answer to Griffin's complaint.

On November 10, 2008, Respondent sent Griffin a letter advising her that there was "no real chance of [her] matter settling" and that her case "must be clearly winnable ... to continue to justify the investment [she] would make in costs and [Respondent would] make in fees."[16] He indicated that they would need to reevaluate their chances of success before proceeding. Between April and September 2009 discovery continued, and Griffin was deposed on August 11, 2009. She testified that her last treatment with Ray was on March 16, 2006.

On June 15, 2009, Respondent was suspended from the practice of law for one year and one day, with the condition of reinstatement, effective August 15, 2009. Pursuant to C.R.C.P. 251.28(b) and (c), Respondent was required to promptly notify Griffin and opposing counsel by certified mail of his suspension and advise Griffin that she could seek legal services elsewhere. However, Respondent never notified Griffin or opposing counsel of his suspension. On August 25, 2009, Respondent filed an affidavit with the People indicating that he had filed a substitution of counsel in Griffin's case. This statement was not true.

Notwithstanding his suspension, on September 3, 2009, Respondent and his associate, John McBride ("McBride"), met with Griffin to discuss her case. At this meeting, Respondent informed Griffin that he had filed her case after the statute of limitations had run. Griffin terminated Respondent's representation that day. On October 6, 2009, McBride filed on Respondent's behalf a motion to withdraw, which was granted that day.

Ray filed a motion for summary judgment on October 30, 2009, based on the statute of limitations. On November 6, 2009, the parties filed a confession of the motion for sum-mary judgment and a stipulation to dismiss Griffin's case with prejudice, which the court granted.

Respondent's failure to communicate with Griffin about the nature of her injury, to timely review her medical records to determine the date of her injury, and to file her case within the statute of limitations period violated Colo. RPC 1.3, which mandates a lawyer act with reasonable diligence and promptness in representing a client. Respondent's conduct also violated Colo. RPC 1.4(a)(3), which provides that a lawyer shall keep the client reasonably informed about the status of his or her matter. Respondent neglected this duty when he failed to notify Griffin that he had filed the complaint outside the limitations period and, later, when he failed to promptly inform Griffin that his license to practice law had been suspended and he could no longer continue to represent her.

Further, Respondent neglected to notify Griffin in writing that his law license had been suspended, that he could no longer represent her, and that she could seek new representation pursuant to C.R.C.P. 251.28(b). He also did not obtain Griffin's consent to continue working on her case during the winding up period as required by C.R.C.P. 251.28(a). By disregarding these rules, Respondent violated Colo. RPC 3.4(c), which provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

Finally, Respondent violated Colo. RPC 8.4(c), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Respondent acted dishonestly by neglecting to notify Griffin that he had been suspended; by leading her to believe that he was a licensed attorney during his period of suspension; by failing to inform her that the statute of limitations had run on her malpractice claim yet continuing to pursue the claim and incurring

---

15. The underlying lawsuit was styled *Donna Griffin v. K. Patrick Ray, D.C.,* case number 2008CV572, District Court for Adams County, State of Colorado.

16. Compl. ¶ 13.

further costs; and by misrepresenting in his affidavit to the Colorado Supreme Court that he had complied with C.R.C.P. 251.28.

### Equal Employment Opportunity Commission ("EEOC") Matters

■ Respondent represented six different clients in separate EEOC matters filed against the United States Postal Service ("USPS"): Stormy A. Blood ("Blood"),[17] Delisa M. Terrell ("Terrell"),[18] Louise A. Lucero ("Lucero"),[19] Michael Garcia ("Garcia"),[20] Elizabeth Boisse ("Boisse"),[21] and Vernon Perry ("Perry")[22] (collectively, "the EEOC clients"). Respondent represented the EEOC clients prior to his suspension on August 15, 2009, and continued to work on each of their cases after his suspension took effect.[23]

Specifically, Respondent filed a witness list with the district court on behalf of Blood on August 25, 2009.[24] On October 8, 2009, Respondent filed a response to USPS's motion to dismiss on Terrell's behalf.[25] In addition, on October 14, 2009, Respondent filed a response to the USPS's motion for a decision without a hearing on Lucero's behalf and then continued to work on Lucero's case as her attorney until August 19, 2010. Further, on October 19, 2009, Respondent filed a response to the USPS's motion for a decision without a hearing in the Perry matter. Respondent continued to represent Perry until August 20, 2010.

Later, on November 20, 2009, Respondent sent a settlement letter to opposing counsel in the Garcia matter in which he referred to Garcia as his "client" and negotiated attorney's fees and costs as part of the settlement.

Respondent was still representing Garcia as of August 31, 2010. Finally, on December 17, 2009, Respondent sent another settlement letter to opposing counsel in the Boisse matter, referring to Boisse as his "client" and negotiating attorney's fees and costs.

Respondent never notified Lucero, Garcia, Boisse, or Perry of his suspension, and he did not comply with C.R.C.P. 251.28(a) and (b) with respect to the EEOC clients, thereby violating Colo. RPC 3.4(c). By continuing to practice law while suspended, Respondent also violated Colo. RPC 5.5, which prohibits a lawyer from practicing law in this jurisdiction without a law license issued by the Colorado Supreme Court. Finally, by neglecting to notify the EEOC clients that he had been suspended and continuing to allow them to believe he was a licensed attorney, Respondent engaged in dishonest conduct in violation of Colo. RPC 8.4(c).

### Nick Avila, Esq. Matter

■ In or around 2009, Jose Manuel Lucero ("J. Lucero") retained Respondent to represent him in a marriage dissolution proceeding. Nick Avila ("Avila") represented J. Lucero's wife in the proceeding. Respondent had a duty to notify Avila by certified mail of the suspension of his law license pursuant to C.R.C.P. 251.28(c). Respondent did not do so.

On August 25, 2009, Respondent filed an affidavit with the Colorado Supreme Court stating that he had submitted a motion to withdraw as counsel and had concluded his representation of J. Lucero. In fact, Respondent had not filed a motion to withdraw as counsel and did not do so until August 31,

---

17. *Stormy A. Blood v. John E. Potter, Postmaster General,* case number 540–2009–00153X.

18. *Delisa M. Terrell v. USPS,* case number DE–0752–09–0481–I–1.

19. *Louise A. Lucero v. John E. Potter, Postmaster General,* case number 541–2008–00128X.

20. *Michael Garcia v. John E. Potter, Postmaster General,* case number 541–2009–00068X.

21. *Elizabeth Boisse v. John E. Potter, Postmaster General,* case number 541–2009–00069X.

22. *Vernon Perry v. John E. Potter, Postmaster General,* case number 541–2008–00335X.

23. The EEOC permits claimants to choose a representative in their proceedings—the representative need not be an attorney. Here, however, Respondent represented the EEOC clients as an attorney.

24. Blood's witness list states it was being filed by Blood "through her counsel John J. Zodrow."

25. Respondent identified himself as Terrell's private attorney.

2009.[26] Through this conduct, Respondent violated Colo. RPC 3.4(c) and 8.4(c).

### Max Stich, Esq. Matter

■ In or around late 2009 and early 2010, during his period of suspension, Respondent worked as a law clerk for Dan Murphy ("Murphy"). In December 2009, Murphy, a licensed attorney, was retained to represent Kim Hunt ("Hunt"), the owner of 1st Storage Concepts, LLC, in *Distinctive Companies, Inc. v. Storage Concepts, LLC.*[27] Max Stich ("Stich") represented Distinctive Companies, Inc. Despite his suspension, Respondent emailed Hunt on February 8, 2010, offering legal advice about his case.[28] On that same day, Respondent emailed to Stich to negotiate on behalf of Hunt.[29] By contravening the Court's order of suspension and continuing to practice law without a license, Respondent violated Colo. RPC 3.4(c) and 5.5.

### IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards* ") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[30] In selecting a sanction after a finding of lawyer misconduct, the Court must consider the duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

■ **Duty:** Respondent violated his duty to his clients, the courts, and the legal profession by failing to notify the EEOC clients, Griffin, and opposing counsel of his suspension from the practice of law and by continuing to practice law while suspended. Respondent also violated his duty to Griffin to act with reasonable competence, diligence, and promptness by neglecting her case, which resulted in its dismissal with prejudice.

*Mental State:* Respondent intentionally engaged in the unauthorized practice of law by continuing to practice law during his suspension. He also intentionally failed to notify his clients and opposing counsel that his law license had been suspended. The Court further concludes that Respondent knowingly neglected Griffin's case and failed to notify her of the status of her case. Finally, the Court finds that Respondent intentionally made misrepresentations through pleadings and affidavit to courts, as well as through letters to opposing counsel, regarding his status as a lawyer and the winding-up process.

*Injury:* Respondent caused actual harm to his clients by failing to notify them that his law license had been suspended, by permitting them to believe he was in good standing with the bar during his representation, and

---

26. The court granted the motion on September 23, 2009.

27. Case number 2008CV1966, District Court for Arapahoe County, State of Colorado.

28. During the February 8, 2010, email exchanges with Hunt and others, Respondent made statements such as: (1) "I think any extra costs in getting a substitute electrician can be pursued by you under the UCC concept of 'cover' damages, but you have a duty to mitigate your damages by planning for the contingency and getting an affordable substitute contractor"; (2) "I am hopeful that a deal can be finalized with 1 Stop but you are almost out of time here. Start by getting a bid ASAP."; (3) "Remember, that if the new bid comes in a lot lower, you may need that as a trial exhibit re damages against 1 Stop ..."; and (4) "I think that both sides will agree that the work was not done by 1 Stop, and the contract price can be reduced accordingly for materials and labor." Compl. ¶¶ 166(a)—(b).

29. The email stated: "Max[,] I have reviewed your letter. Looks like things are coming along nicely.... I have asked Peg to stick in a paragraph on 'Construction Draws' so the parties and the trustee know exactly what's going on as you requested.... In consideration of the draw, there has to be some protection for Mr. Hunt.... Probably a performance bond is the easiest thing to put in place. Unless you can suggest some other security for Mr. Hunt in return for your client getting nearly half the money before any work is done, ... we'll need to adjust the contract process and payment dates accordingly." Compl. ¶ 166(c).

30. *See In re Roose,* 69 P.3d 43, 46–47 (Colo. 2003).

by failing to wind up his practice. By his actions, Respondent deprived his clients of the ability to seek representation by a licensed attorney.

In addition, Respondent caused actual harm to Griffin by filing the complaint outside the applicable statute of limitations period, leading to the dismissal of her case. Griffin said she believed her case against Ray was worth $900,000.00 to $1,000,000.00 because of her substantial injuries and inability to work. There is insufficient evidence before the Court regarding Griffin's statement concerning the value of her case. However, the potential value of her case is considered for the limited purpose of demonstrating the emotional harm she suffered. Respondent's neglect of Griffin's case caused her a large measure of stress and potential financial harm. In addition, Respondent's actions have eroded Griffin's trust in lawyers.

Finally, Respondent caused USPS potential injury by making written settlement demands that included attorney's fees and costs in the Garcia and Boisse matters. Rick Eves, managing counsel for USPS, stated in a letter to the People that USPS did not settle these two matters but, if it had, it might have unwittingly included attorney's fees and costs for the work performed by Respondent while his license was suspended.[31]

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed.[32] Mitigating circumstances include any considerations or factors that may justify a reduction in the severity of the sanction to be imposed.[33] The Court considers evidence regarding the following aggravating circumstances in deciding the appropriate sanction. Because Respondent did not appear at the hearing or otherwise participate in these proceedings, the Court is unaware of any mitigating factors.

*Prior Disciplinary Offenses—9.22(a):* Respondent was suspended for one year and one day, with the condition of reinstatement, effective August 15, 2009, for violations of Colo. RPC 3.3(a)(1), 3.4(c), and 8.4(c). His misconduct included failing to report his interest in property, making misrepresentations, and for falsely testifying in his personal bankruptcy case.

*Dishonest or Selfish Motive—9.22(b):* Respondent acted with a dishonest and selfish motive when he failed to notify his clients and opposing counsel of his suspension and then continued to practice law.

*Pattern of Misconduct—9.22(c):* Respondent's repeated failure to notify his clients and opposing counsel that his license was suspended and his continued noncompliance with court orders regarding suspension constitutes a pattern of misconduct.

*Multiple Offenses—9.22(d):* By the Court's order of default, Respondent was found to have engaged in multiple acts of misconduct by continuing to practice law while suspended, failing to notify his clients and opposing counsel of his suspension, and making misrepresentations in affidavits he filed with the Colorado Supreme Court regarding the winding up of his practice.

*Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process—9.22(f):* Respondent falsely represented to the Court during the hearing on September 7, 2011, that the Nichols–Centennial address was his current address. There is evidence before the Court that another individual purchased the Nichols–Centennial residence on July 29, 2011, and was the sole resident. Respondent's probation officer also stated that Respondent had provided him with a South Glencoe address on February 14, 2011, and never updated that address.

---

**31.** *See* Ex. 1. 29 C.F.R. § 1614.501(e)(1)(iii) permits a complainant to seek attorney's fees and costs from a federal agency, provided his or her representative is a member in good standing of a state bar.

**32.** *See* ABA *Standard* 9.21.

**33.** *See* ABA *Standard* 9.31.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent has been licensed to practice law in Colorado since 1993.

### Sanctions Analysis Under ABA *Standards* and Case Law

ABA *Standard* 4.41(b) provides that disbarment is appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client. Likewise, ABA *Standard* 7.1 recommends disbarment when a lawyer knowingly engages in conduct that violates a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and thereby causes serious or potentially serious injury to a client, the public, or the legal system. Finally, ABA *Standard* 8.1(a) provides for disbarment when a lawyer intentionally or knowingly violates the terms of a prior disciplinary order, and such violation causes injury or potential injury to a client, the public, the legal system, or the profession.

Colorado Supreme Court case law applying the ABA *Standards* also holds that disbarment is appropriate in cases similar to this one. The Colorado Supreme Court's decision in *People v. James* provides particularly relevant precedent.[34] In *James,* the Colorado Supreme Court found that a lawyer's continued practice of law while under an order of suspension, with no efforts to wind down his practice, coupled with his failure to protect the legal interests of his client, warranted disbarment.[35] There, James was suspended from the practice of law for noncompliance with mandatory continuing legal education requirements.[36] Despite this suspension, he actively engaged in the practice of law for one and a half years after his suspension and failed to comply with the disclosure and notice requirements for winding up affairs after his suspension.[37] In addition, James failed to take any action to protect the legal interests of a client in connection with a personal injury claim, which resulted in the running of the statute of limitations.[38] He also had a history of prior discipline.[39] The Colorado Supreme Court found disbarment appropriate, observing that "any sanction less than disbarment would depreciate the seriousness of [James's] misconduct in the eyes of both the profession and the public."[40]

Likewise, in *People v. Wilson,* the Colorado Supreme Court disbarred an attorney who practiced law after he had been immediately suspended due to a felony conviction.[41] There, the attorney continued to represent a client after he was suspended and failed to notify the client and opposing counsel of the suspension.[42] The attorney also failed to attend a damages hearing on behalf of his client, which caused the court to enter a nearly $200,000.00 judgment against the client.[43] Given the seriousness of the attorney's misconduct and the harm caused, the attorney's disciplinary history, and the lack of mitigating factors, the Colorado Supreme Court found disbarment warranted.[44]

The Court finds that the ABA *Standards* and Colorado case law supports the imposition of disbarment in this matter.[45] Further, Respondent's nonappearance at the sanctions

---

34. 731 P.2d 698 (Colo.1987).

35. *Id.* at 700.

36. *Id.* at 699.

37. *Id.*

38. *Id.*

39. *Id.* at 700.

40. *Id.*

41. 832 P.2d 943, 943 (Colo.1992).

42. *Id.* at 943–44.

43. *Id.* at 944.

44. *Id.* at 945.

45. *See also People v. Swan,* 938 P.2d 1164, 1166 (Colo.1997) (approving disbarment of attorney who took no steps to notify his client of his suspension or to protect his client's interest, which caused actual harm to his client); *People v. Redman,* 902 P.2d 839, 840 (Colo.1995) (upholding disbarment where attorney knowingly engaged in the practice of law while administratively suspended); *People v. Dolan,* 873 P.2d 766, 769 (Colo.1994) (upholding disbarment where attorney failed to perform the affirmative duties of notification and winding up imposed by the disciplinary rules and had an extensive history of similar discipline).

hearing demonstrates that he is indifferent to and has no regard for these disciplinary proceedings. Accordingly, the Court accepts the People's recommendation of disbarment.

## V. CONCLUSION

Respondent's callous disregard of the rules regulating the practice of law in Colorado resulted in serious harm to his clients and constitutes an egregious violation of the basic responsibilities a lawyer owes to his client and to the profession. Respondent ignored his professional duties by failing to comply with rules or to even attend the disciplinary hearing. In light of the serious actual and potential harm Respondent has caused, the several applicable aggravating factors, and the absence of any mitigating factors, the Court concludes Respondent should be disbarred.

## VI. ORDER

The Court therefore **ORDERS:**

1. John Joseph Zodrow, attorney registration number 22706, is hereby **DISBARRED.** The disbarment **SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [46]

2. Respondent **SHALL** file any post-hearing motions or application for stay pending appeal with the Court **on or before Wednesday, January 4, 2012.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within five days, unless otherwise ordered by the Court.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fifteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than ten days thereafter.

4. Complainant's September 30, 2011, "Motion to Clarify" is **GRANTED.**

[46]. In general, an order and notice of sanction will issue thirty-one days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue

The Court incorporates the language set forth in paragraph 4 of the motion into its "Order Denying Motion to Dismiss for Insufficiency of Process" dated September 29, 2011.

later than thirty-one days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.